In re MURALL, INC., Debtor.

Bankruptcy No. 89–03768.

United States Bankruptcy Court,
D. South Carolina.

Dec. 18, 1989.

Sherwood M. Cleveland, Columbia, S.C., for debtor.

Lawrence W. Johnson, Jr., Columbia, S.C., for creditor Bankers First Federal Sav. and Loan Assn.

## ORDER

**WILLIAM THURMOND BISHOP,** Bankruptcy Judge.

This matter is before me on the debtor's Motion for Extension of the Automatic Stay. Bankers First Federal Savings and Loan Association ("Bankers First") in reply, objected to the relief sought. As set forth below, based upon the arguments of counsel and applicable law, the motion is denied.

## FINDINGS OF FACTS

Bankers First initiated a lawsuit against, *inter alia,* Murall, Inc. ("Murall"), J. Hugh Ryall ("Ryall"), and H. Victor Murdaugh, Jr. ("Murdaugh"). The Complaint contained three causes of action. The first cause of action is for the foreclosure of a Note and Mortgage given to Bankers First by Murall dated August 29, 1986. The second and third causes of action are for judgments against Ryall and Murdaugh, respectively, based on joint and several guaranties of payment.

On October 20, 1989 Murall filed its Chapter 11 Petition in this Court. Bankers First appeared on October 23, 1989 before the Master–in–Equity and expressed its intent to proceed on the second and third causes of action against Murdaugh and Ryall. Murdaugh appeared at that hearing and expressed his intent, and that of Ryall, to petition the Bankruptcy Court to extend the automatic stay. Citing equity, comity and judicial economy as the basis for his decision, the Master–in–Equity, over the objection of Bankers First, continued the merits hearing until that point in time after which Murdaugh and Ryall had the opportunity to file their Motion and have it heard by the Bankruptcy Court. By this Motion, the debtor seeks to extend the Automatic Stay so as to stay the state court actions against the guarantors. No evidence was presented at the hearing by the Debtor.

## ISSUE

The issue presented is whether the facts and circumstances of this case warrant the extension of the automatic stay under either 11 U.S.C. § 362(a)(1) and (3) or under 11 U.S.C. § 105.

## DISCUSSION AND CONCLUSIONS OF LAW

The Debtor asserts that the action against the guarantors should be stayed because a judgment adverse to the guarantors may be binding upon the Debtor. The pertinent portions of the automatic stay provided for in 11 U.S.C. § 362(a) are:

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; [and]

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.

Herein, Bankers First seeks to continue only its state court action against the guarantors. Such action clearly is not against the Debtor, which is stayed under § 362(a)(1); nor, does it involve property of the estate, which is stayed under § 362(a)(3). Accordingly, the merit of the Debtor's contention is determined by whether, in fact, a determination against the guarantors is binding upon the Debtor.

The Fourth Circuit Court of Appeals has determined that an extension of the automatic stay to litigation involving nondebtors is appropriate where "unusual circumstances" exist. *A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d 994 (4th Cir.1986) [hereinafter *"Robins"*]. The *Robins* case cited with favor *In re Metal Center, Inc.,* 31 B.R. 458 (Bankr.D.Conn.1983) which addressed the binding effect of such a judgment. Therein, the Court concluded that there would be no binding effect upon the debtor based upon such judgment. The analysis is based upon the protection afforded to a debtor by the automatic stay which insulates said debtor from involve-

ment in such litigation as well as any binding effect of said judgment. The Court concluded that "the debtor would not be bound by any judgment [the creditor] might obtain against [the co-debtor] in state court, and consequently, [the co-debtor] is not protected by the automatic stay." 31 B.R. at 463.

The Third Circuit Court of Appeals in *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3rd Cir.1984) reached the same conclusion in the *Johns–Manville* bankruptcy. The Court affirmatively found that since the debtor therein was not a party to the other action, "it could not be bound by *res judicata* or collateral estoppel". 743 F.2d at 995.

That an adverse judgment against the guarantors has no binding effect on the debtors is further supported by the terms of the subject guaranties as well as relevant law. See *Tri–South Mortgage Investors v. Fountain*, 266 S.C. 141, 221 S.E.2d 861 (1976). The subject guaranties enable Bankers First to proceed against any or all of the obligors under the respective debt documentation. As there is no binding effect on the debtor, or his property, the automatic stay pursuant to 11 U.S.C. § 362(a)(1) and (3) is inapplicable.

■ The *Robins* case recognized that an "unusual circumstance" warranting the extension of the stay would encompass a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment against the nondebtor third-party. Although there exists no absolute indemnification in the instant case, the debtor asserts that the guarantors have a common law right of subrogation and that such right of subrogation warrants the extension of the automatic stay. The subject guaranties are unconditional, primary obligations of the guarantors. It is well settled that there is no equitable subrogation right in that setting:

> There can be no doubt of the proposition that equity will deny the right of subrogation to one who pays or has paid a debt for which he was at the time primarily liable. That has been thoroughly settled by many cases. The doctrine can be

invoked only by one who has paid a debt for which he was at the time secondarily liable, in relief of his own property upon which such debt was a lien. *Dunn v. Chapman*, 149 S.C. 163, 146 S.E. 818, 820 (1929).

The debtor's position that the guarantors are sureties within the meaning of *Colonial Acceptance v. Northeastern Printcrafters*, 75 N.C.App. 177, 330 S.E.2d 76 (1985) and *Bessinger v. National Surety Corporation, et al.*, 207 S.C. 365, 35 S.E.2d 658 (1945) is equally unfounded. In South Carolina, an obligation of surety rests solely in contract. *South Carolina Public Service Commission v. Colonial Construction Co.*, 274 S.C. 581, 266 S.E.2d 76 (1980). No such contract has been set forth or proven to this Court. The subject guaranties are strictly contracts of guaranty, and not surety. As a result, relief should not be granted pursuant to 11 U.S.C. § 362 in that the requisite "unusual circumstances" do not exist.

■ Even more, unlike the instant case, the *Robins* case involved "unusual circumstances" indeed. There the debtor was forced into bankruptcy because of the onslaught of lawsuits involving a defective product. The number of these lawsuits had grown to 5,000 as of the time of the petition filing. Additionally, between 1972 and 1985, 7,500 cases had been settled.

To the contrary, the instant case involves the simplest of factual patterns. Bankers First seeks to continue its state court action against its guarantors. To extend the automatic stay herein would render most usual situations "unusual".

If this Court were to grant the Debtor's requested relief, it would, in effect, create an automatic stay for non-debtor guarantors in a Chapter 11 proceeding. Such a stay was not intended by Congress. The natural extension of such a precedent would result in a co-debtor stay in all Chapter 11 cases where obligations of the debtor were guaranteed by non-debtors. Such protection was afforded by Congress only in cases under Chapter 12 and Chapter 13

of Title 11. *See* 11 U.S.C. § 1201 et seq. and § 1301 et seq.

The guarantors herein agreed to primary liability, joint and several. Under the guaranty and state law, Bankers First is permitted to pursue the guarantors independent of pursuit against the debtor. As stated in *Robins*, where independent liability exists, "the automatic stay would clearly not extend to such non-debtor." 788 F.2d 999, *citing In Re Metal Center, Inc., supra.*

The right of a lender to proceed against guarantors of a debtor was recently upheld by the same court in *Credit Alliance Corporation v. Williams*, 851 F.2d 119 (4th Cir.1988). Therein, the Fourth Circuit addressed a situation factually on point with the instant case. The court stated "nothing in § 362 suggests that Congress intended that provision to strip from the creditors of a bankrupt debtor the protection they sought and received when they required a third-party to guaranty the debt. Congress knew how to extend the automatic stay to non-bankrupt parties when it intended to do so.... No such protection is provided to the guarantors of Chapter 11 bankrupts by § 362(a)." 851 F.2d at 121, *citing, Williford v. Armstrong World Industries, Inc.*, 715 F.2d 124 (4th Cir.1983). In the *Williams* case the court upheld their decision in the *Robins* case but recognized that there were no "unusual circumstances". The court stated:

> There is nothing 'unusual' about this guaranty agreement that would permit the guarantor, Williams, to invoke the statutory protection of § 362 or that would permit us to stay the enforcement of the New York judgment against him on equitable grounds. It is unnecessary to stay proceedings or avoid the judgment against the non-bankrupt guarantor to protect Penn Hook or to prevent the dissipation of its assets, since neither Penn Hook nor its estate is jeopardized by the judgment against Williams. The very purpose of a guaranty is to assure the [creditor] that in the event the [debtor] defaults the [creditor] will have someone to look to for reimbursement. The purpose of the guaranty would be frustrated by interpreting § 362 so as to

stay Credit Alliance's action against the non-bankrupt guarantor when the defaulting debtor petitions for bankruptcy. 851 F.2d at 121, 122.

■ Having determined that the facts of the instant case do not warrant extension of the automatic stay pursuant to 11 U.S.C. § 362(a)(1) and (3), the issue is whether the stay should be extended pursuant to 11 U.S.C. § 105. Such an extension requires that the debtor must demonstrate that the "failure to enjoin would effect [sic] the bankruptcy estate and would adversely or detrimentally influence and pressure the debtor through the third party." *Robins* at 1003 *citing, In re Otero Mills, Inc.*, 25 B.R. 1018, 1020 (D.N.M.1982). To invoke the equitable powers of this Court for stay or injunction pursuant to 11 U.S.C. § 105, the debtor must show as follows:

(A) Irreparable injury to the movant;

(B) That the injunction will not cause substantial harm to others;

(C) That the public interest is best served by issuing the preliminary injunction; and

(D) A reasonable likelihood of successful reorganization.

*In the Matter of 1600 Pasadena Offices, Ltd.*, 64 B.R. 192, 194 (Bankr.M.D.Fla. 1986), *citing, In re DeLorean Motor Company*, 755 F.2d 1223, 1228 (6th Cir.1985).

With regard to this burden of proof, no" evidence has been offered and, therefore, the Court should not invoke its equitable powers.

■ Finally, the debtor asserts that its obligation to Bankers First and the Guarantors' obligation to Bankers First are, in reality, a single obligation. Thus, the debtor contends, there exists the possibility of inconsistent judgments. In fact, the opposite is true. The Guarantors have entered into separate contractual arrangements with Bankers First which are the basis of any relief which Bankers First seeks against them. The terms of the guaranty and state law provide for pursuit by Bankers First against any or all of the obligors under the respective obligations. There is,

in fact, an independent and separate financial obligation running from the guarantors to Bankers First. The Sixth Circuit Court of Appeals addressed this very issue in *Lynch v. Johns–Manville Sales Corp.,* 710 F.2d 1194 (6th Cir.1983). Therein, the court noted that "any duplicative or multiple litigation which may occur is a direct by-product of bankruptcy law. As such, the duplication, to the extent that it may exist, is congressionally created and sanctioned." 710 F.2d at 1199.

This Court has spoken as to the rights of a lender to enforce guaranties independent of the bankruptcy process. *See, In re Kash and Karry,* 28 B.R. 66 (Bankr.D.S.C. 1982) and *In re Chestnut Company, Inc.,* 39 B.R. 519 (Bankr.D.S.C.1984). Both of these cases are consistent with *Robins* and *Williams.*

### CONCLUSION

Based on the foregoing findings of fact and conclusions of law, the attempt by the debtor to shield its guarantors from the continued litigation is unfounded. There are no "unusual circumstances" existing herein which justify such a result. In fact, the debtor attempts to indirectly shield the guarantors with the automatic stay which is otherwise not provided directly by statute. In reaching this result, this Court need look no further than the *Williams, Robins,* and *Kash & Karry* cases. Accordingly,

IT IS ORDERED, that the debtor's Motion for Extension of the Automatic Stay is denied, and Bankers First may proceed in state court to enforce its rights against the guarantors.

AND IT IS SO ORDERED.