**In re SUDBURY, INC., Debtor.**

**SUDBURY, INC., Plaintiff,**

**v.**

**John H. ESCOTT, Sr., et al., Defendants.**

**Bankruptcy No. 92–10148.**
**Adv. No. 92–1237.**

United States Bankruptcy Court,
N.D. Ohio.

May 5, 1992.

Frances Floriano Goins, Carolyn J. Buller, Squire, Sanders & Dempsey, Cleveland, Ohio, for debtor-plaintiff.

Norman Rifkind, Beigel & Sandler, Ltd., Chicago, Ill., and Mark Schlachet, Cleveland, Ohio, for defendants, Ross Lake and W. Dean Buckley.

Hershel R. Payne, Bishop, Payne, Williams & Werley, L.L.P., Fort Worth, Tex., and Jerome Leiken, Dettelbach, Sicherman & Baumgart, L.P.A., Cleveland, Ohio, for defendants, John Escott, Sr. and Jr.

## MEMORANDUM OF OPINION

DAVID F. SNOW, Bankruptcy Judge.

### Background

This injunction action arises out of two lawsuits brought against the Debtor's present or former officers and directors based on allegations of fraud. The first suit, *Lake v. Sudbury, Inc.*, was filed in the United States District Court for the Central District of Illinois on March 14, 1991 against the Debtor, one of Debtor's subsidiaries, Tinkham Veale, II, one of Debtor's present directors, and Charles W. Walton, Jon E. Denny and Floyd L. Bishop, each of whom were formerly officers and/or directors of the Debtor. The other case, *Escott v. Veale*, was filed January 21, 1992, after the initiation of Debtor's chapter 11 proceeding, in the United States District Court for the Northern District of Texas. It included the defendants in the Lake case other than the Debtor and its subsidiary. In addition it included Tinkham Veale, III, one of Debtor's present directors, as well as Thomas M. Lynch, Debtor's executive vice president and its chief financial officer, and Ernst & Young, Debtor's auditors. For convenience the plaintiffs in both the Lake and Escott actions are sometimes referred to in this opinion as the "Plaintiffs".

Debtor brought this adversary proceeding to enjoin activity in both cases on a number of grounds including allegations that it was the real party in interest in the Plaintiffs' actions, that it was obligated to indemnify the individual defendants, and that the prosecution of these actions would burden its personnel and interfere with its efforts to sell its subsidiary companies and prosecute a reorganization plan.

Although Debtor's motion sought an order enjoining Plaintiffs from "presenting evidence, pursuing discovery or proceeding in any manner" in Plaintiffs' actions, the parties' arguments and evidence focused solely on the individual defendants. Neither the Lake Plaintiffs nor the Debtor addressed the Debtor's subsidiary. Neither the Escott Plaintiffs nor the Debtor addressed Ernst & Young. The parties have apparently concluded that Plaintiffs' actions will be stayed against all defendants unless they can go forward against the individual defendants.

This memorandum of opinion constitutes the Court's findings of fact and conclusions of law as required by rule 52 of the Federal Rules of Civil Procedure made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7052.

### Findings of Fact

Debtor is a holding company with more than 20 operating subsidiaries. Prior to filing its chapter 11 petition on January 10, 1992, Debtor had been intensively engaged for nearly a year in an effort to restructure its debt. During this period it was actively involved in discussions with its banks, which are secured by liens on substantially all of its assets, and with the holders of its subordinated unsecured debt. The banks' secured debt is approximately 78 million dollars; the subordinated debt, held primarily by insurance companies, is approximately 80 million dollars. Debtor initially sought infusion of capital through third party investment, but this effort failed.

The Debtor filed this chapter 11 case pursuant to agreements with its lenders obligating it to sell subsidiaries and to develop a reorganization plan within a very tight time schedule. The Debtor is required to make payments to the banks starting June, 1992, which will require the sale of certain of its subsidiaries. The Debtor's disclosure statement and reorganization plan are to be filed by July 15, 1992. These obligations are set forth in a cash collateral order agreed to by the Debt-

or and its lenders and entered by the Court on February 7, 1992 (the "Cash Collateral Order"). Debtor has hired investment bankers to assist it in marketing its subsidiaries.

The Debtor has only 21 employees who manage financial, tax and other business-wide functions. They also have primary responsibility for negotiating plan provisions and prosecuting sales of the Debtor's subsidiaries in conjunction with the Debtor's investment bankers. This is more than full-time activity for Debtor's small staff, and Debtor's key employees have worked an unusually heavy schedule since the filing, a schedule which shows no indication of easing. If the Plaintiffs' actions go forward, Debtor's participation in those actions will impose significant additional demands on its employees and divert Debtor's attention from its reorganization effort.

Notwithstanding the fact that Debtor has been severed as a defendant in the Lake action and was not named as a defendant in the Escott action, Debtor must nevertheless participate and carry the principal burden in those actions. The claims in both actions are generally premised on the defendants' alleged fraud while acting as officers or directors of the Debtor. That fraud is based primarily on allegations that the Debtor's business and finances were not properly represented in Debtor's financial and business information furnished the Plaintiffs. In short, it is not plausible that the defendants in these actions could be found liable to Plaintiffs except on facts that would impose liability on the Debtor. Debtor asserts credibly that under these circumstances its liability may be determined on collateral estoppel principles in Plaintiffs' actions. The magnitude of its potential liability to Plaintiffs dictates that it defend Plaintiffs' actions vigorously. Plaintiffs' actions assert damage claims exceeding a total of 120 million dollars.

Moreover, Debtor contends it is obliged to indemnify its present and former directors and officers who are defendants in these actions under written indemnities, applicable Delaware state law, and the provisions of the Debtor's by-laws. Plaintiffs contend, however, that these indemnities are not enforceable against the Debtor. They argue that the indemnities may be void as against public policy if securities fraud is proved and question whether a debtor in a chapter 11 proceeding may undertake the defense of persons no longer affiliated with it or where the actions indemnified occurred prior to filing the bankruptcy petition. Moreover, in the case of Thomas Lynch the Escott plaintiffs argue that the actions of which they complain took place while he was a partner of Ernst & Young and before he was hired by the Debtor. Debtor and its subsidiaries escrowed nearly $1,000,000 prepetition in connection with its indemnity obligations, which may be available to the indemnitees. In short, the extent and scope of the Debtor's indemnity obligations are unclear; their clarification could itself be the subject of dispute and litigation. Whatever the ultimate answer to these questions, prudence dictates that the Debtor treat its obligations as very real and substantial, even if those obligations are ultimately treated as prepetition claims. It is therefore clear that the Debtor must participate in these actions if they go forward in order to defend its own position as well as to respond to potential indemnity obligations.

But apart from Debtor's liability concerns, it is clear that the Debtor and its present personnel will bear the brunt of discovery and of mounting a defense for the individual defendants. As the discovery request in the Lake action makes clear, the bulk of the documents and records which will be required for Plaintiffs' claims, as well as Debtor's defense, are in the possession of the Debtor. Collecting, reviewing and producing these materials will necessarily involve extensive time and effort on behalf of Debtor's personnel that will impair their work on Debtor's reorganization.

For their part, Plaintiffs introduced no evidence that delaying their actions would harm them in any way. Plaintiffs' position appears simply to be that their actions are not barred by section 362 of the Bankruptcy Code and, therefore, that this Court has

no authority or power to enjoin prosecution of their actions notwithstanding any adverse impact on the Debtor or its reorganization.

### Discussion

This Court has jurisdiction in this adversary proceeding under 28 U.S.C. § 1334(b) and General Order No. 84 entered in this district on July 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (G) and (O). This Court has personal jurisdiction over the Plaintiffs under Federal Rule of Bankruptcy Procedure 7004(d), which provides for nationwide service of process. *See In re Highway Equipment Co.*, 120 B.R. 910 (Bankr.S.D.Ohio 1990).

The continued prosecution of Plaintiffs' actions would violate the spirit, but not the letter, of section 362 of the Bankruptcy Code. That section bars continuation of actions against debtors brought, or which could have been brought, prior to the commencement of the bankruptcy case. There is no question but what these are precisely the sort of prepetition actions that are expressly banned by section 362 if the debtor were the defendant. The purpose of section 362 is to afford the debtor relief from such creditor claims.

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

S.Rep. No. 95–989, 95th Cong., 2nd Sess. 54–55 (1978) *reprinted* in U.S.Code Cong. & Admin.News 1978, 5787, 5840–5841. The need for such a breathing spell is particularly pronounced, as here, where the debtor is struggling under a very tight time schedule to reorganize. Where, as in this case, it appears that the Debtor is inextricably involved in actions against third parties, several courts have held there are "unusual circumstances" which justify application of section 362. *A.H. Robins Co., Inc. v. Piccinin (In re A.H. Robins Co., Inc.)*, 788 F.2d 994 (4th Cir.1986); *Lomas Financial Corp. v. Northern Trust Co. (In re Lomas Financial Corp.)*, 117 B.R. 64 (S.D.N.Y. 1990), *remanded on other grounds*, 932 F.2d 147 (2nd Cir.1991).

In both cases the Court found that "there was such an identity between the debtor and the third party defendant" that the Debtor was the "real party defendant," in *Piccinin* largely because of the debtor's indemnity obligations and in *Lomas* because of indemnity obligations and because the defendants' alleged fraudulent misrepresentations were in fact made in their capacity as Lomas officers. *Piccinin*, 788 F.2d at 999; *Lomas Financial Corp.*, 117 B.R. at 68. The Lake Plaintiffs would distinguish *Piccinin* on the grounds that Debtor's indemnities may be unenforceable and that the present case does not involve a multitude of product liability actions. They would distinguish *Lomas* on the grounds that the Lake action involves no present officer of the Debtor and that at least some of the individual defendants are wealthy and are the real target of their action.

There are in the present case questions as to the enforceability of the indemnities which are not reflected in the opinions in *Piccinin* or *Lomas*. Moreover, there is no evidence that Plaintiffs do not view the individual defendants as real targets. But these distinctions miss the fundamental similarities between this case and those. Plaintiffs' actions are based upon their prepetition transactions with the Debtor, and Debtor will be compelled to defend them because of legitimate indemnity and collateral estoppel concerns as fully as if it were a named defendant. This would entail a substantial and costly litigation effort on major prepetition claims. This appears to be a powerful and legitimate incentive for the Court to invoke section 105 of the Bankruptcy Code to issue an order temporarily staying Plaintiffs' actions in order to make effective the section 362 stay, absent some overriding right in Plaintiffs or harm to their interests.

Plaintiffs, however, allege no harm or assert no right against the individual defen-

dants which does not stem from their having acted as officers or directors of Debtor. Plaintiffs did not bargain with the individual defendants for their personal guarantees. The effect of the order requested by Debtor will simply be to put the Plaintiffs in the same position as others who dealt with the Debtor prepetition.

The order Debtor seeks will temporarily stay further proceedings in Plaintiffs' actions. Most courts have held that the criteria for granting such an order under section 105 of the Bankruptcy Code are set forth in rule 65 of the Federal Rules of Civil Procedure (rule 7065 of the Federal Rules of Bankruptcy Procedure) relating to preliminary injunctions. *Unsecured Creditors' Comm. v. DeLorean (In re DeLorean Motor Co.),* 755 F.2d 1223 (6th Cir.1985). According to *DeLorean,* "[f]our factors are particularly important in determining whether a preliminary injunction is proper: (1) the likelihood of plaintiff's success on the merits; (2) whether the injunction will save the plaintiff from irreparable injury; (3) whether the injunction would harm others; and (4) whether the public interest would be served by the injunction." *Id.* at 1228.

The only factor which Plaintiffs contest is irreparable harm. However, Debtor's evidence persuasively establishes that it would be irreparably harmed unless Plaintiffs' actions are stayed. Given Debtor's dearth of personnel, its severe time constraints in putting forward a confirmable reorganization plan and the magnitude of its problems reflected in the testimony and exhibits, it appears clear that continuation of Plaintiffs' actions would substantially hinder Debtor's reorganization. Notwithstanding Debtor's extended negotiations with its lenders, the evidence reveals that Debtor has extensive work ahead of it to comply with the Cash Collateral Order and to develop a confirmable reorganization plan.

The realities of this case are that Plaintiffs' actions would require the Debtor to become embroiled in major litigation at a time when its efforts should be directed toward reorganization. Each of the Lake and Escott actions requests damages in excess of $60 million. Each would require the examination and production of voluminous records of the Debtor, analysis of its activities and financial reporting over a number of years and would be time-consuming and costly. To permit Plaintiffs to proceed with these actions under these circumstances would directly frustrate the purpose of section 362 and would sanction what is in effect, if not intent, an end run around the proscription of that section.

This is the sort of harm which has generally been held to be irreparable. "In a bankruptcy context, irreparable harm may be discerned if 'the action sought to be enjoined would so consume the time, energy and resources of the debtor that it would substantially hinder the debtor's reorganization effort.' " *Baldwin–United Corp. v. Paine Webber Group, Inc. (In re Baldwin–United Corp.),* 57 B.R. 759, 768 (S.D.Ohio 1985) (quoting *In re Anje Jewelry Co., Inc.,* 47 B.R. 485, 487 (E.D.N.Y. 1983)). *See Lomas Financial Corp.,* 117 B.R. at 67.

Plaintiffs' suggestions that Debtor's harm may not be irreparable because it might be compensated by money damages is disingenuous. Absent a stay, Plaintiffs have the right to prosecute their actions. Therefore, their doing so will not provide Debtor a damage claim. But even if there were some right to damages, there is no way to measure by money the harm to Debtor and its reorganization effort by being forced to divert its energies and resources to the defense of Plaintiffs' actions.

Analysis of each of the other three factors described in *DeLorean* indicates that debtors are entitled to the stay requested. Insofar as the public interest is implicated, it supports issuance of the requested injunction. Courts have generally recognized a public interest in reorganization. *See, e.g., United States v. Whiting Pools, Inc.,* 462 U.S. 198, 204, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983). Although Debtor's circumstances are strained, Debtor is endeavoring to reorga-

nize and there is no evidence that it will be unable to do so.

The injunction requested by Debtor would not appear to injure Plaintiffs nor have they argued that it would. Debtor is constrained by the Cash Collateral Order to confirm a reorganization plan by September 30, 1992. Debtor has not asked for a permanent injunction but only for an injunction spanning the period of its reorganization effort. Any delay imposed on Plaintiffs should be brief.

The last factor cited in *DeLorean* is whether the party seeking the injunction has shown the requisite likelihood that it will succeed on the merits. In *DeLorean* the creditors' committee sought an injunction blocking a third party's disposition of funds while the committee sought to determine whether the funds could be traced to the debtor. The court granted the injunction despite the committee's showing only a possibility that the funds might belong to the debtor since the court found the other factors weighed heavily in the debtor's favor.

The stay requested in this case has a different purpose. It is intended to augment the automatic stay and provide the Debtor breathing space while it seeks to reorganize. The courts in this circumstance have held that success on the merits is to be evaluated in terms of the likelihood of a successful reorganization. *In re Baldwin–United Corp.,* 57 B.R. at 767; *Otero Mills, Inc. v. Security Bank & Trust (In re Otero Mills, Inc.),* 21 B.R. 777, 779 (Bankr.D.N.M., 1982), *aff'd* 25 B.R. 1018 (C.N.M.1982); *Landmark Air Fund II v. Bancohio National Bank (In re Landmark Air Fund II),* 19 B.R. 556, 560 (Bankr.N.D.Ohio 1982). The evidence establishes that the Debtor is hard at work on a reorganization plan. Plaintiffs do not suggest that Debtor's effort will fail. In fact, they argue that Debtor does not need a stay to facilitate reorganization since it is so close to agreement with its creditors on its reorganization plan. Therefore, Debtor has established the requisite probability of success on the merits. Moreover, as in *DeLorean,* the Debtor has shown that the other factors weigh heavily in favor of an injunction.

The Lake Plaintiffs' reliance on the district court's decision in *Glassman v. Electronic Theatre Restaurants Corp, (In re Electronic Theatre Restaurants Corp.),* 53 B.R. 458 (N.D.Ohio 1985) is misplaced. In that case the district court reversed an order staying a proceeding against nondebtor defendants in a case pending in district court. The district court noted that the bankruptcy court had "explicitly found that the debtor, who sought the stay, had failed to meet the criteria necessary for the granting of a preliminary injunction." *Id.* at 461. There is nothing in the opinion to suggest either that irreparable harm may not be found from the prosecution of lawsuits against nondebtors or that the bankruptcy court lacks power to stay lawsuits under section 105 where irreparable harm is found. In fact, the district court cited *In re Otero Mills, Inc.,* which granted such a stay, without suggesting any criticism of its result. *Id.* at 462.

Plaintiffs' reliance on *Supermercado Gamboa, Inc. v. Camara De Commerciantes Mayoristas De Puerto Rico, Inc. (In re Supermercado Gamboa, Inc.),* 68 B.R. 230 (Bankr.D. Puerto Rico 1986) is also misplaced. In *Supermercado* the court refused to stay an action against officers and shareholders of the debtor corporation on their personal guarantees. In that case plaintiffs had bargained for and obtained the personal commitments of the individual defendants to pay if the debtor did not. To stay such actions would upset the bargained for expectations of the parties to an extent not present here. Moreover, the text of the Bankruptcy Code suggests that courts should be particularly sensitive to staying actions against guarantors. Section 1301 of the Code expressly stays actions to collect "a consumer debt of the debtor from any individual that is liable on such debt with the debtor." The legislative history makes it clear that this section was drafted with guarantors in mind.

This section is new. It is designed to protect a debtor operating under a chapter 13 individual repayment plan case by

insulating him from indirect pressures from his creditors exerted through friends or relatives that may have co-signed an obligation of the debtor.

House Rep. No. 95–595, 95th Cong., 1st Sess. 426 (1977), U.S.Code Cong. & Admin.News 1978, 6381.

Section 1301 provides a basis, as reflected in *Supermercado,* to refuse to stay an action against a guarantor simply because of his claim to indemnity from the debtor. But nothing in *Supermercado* suggests that the bankruptcy court lacks the power to grant, or should not grant, a stay against a codebtor under appropriate circumstances. In fact, the court noted that a codebtor stay would be appropriate if the facts indicated "that a reasonable 'breathing spell' for the corporate officers was necessary to permit them to formulate and put forward a plan of reorganization free from such distraction." *In re Supermercado Gamboa, Inc.,* 68 B.R. at 233 (referring to *Piccinin, supra,* and *Johns–Manville Corp. v. The Asbestos Litigation Group (In re Johns–Manville Corp.),* 26 B.R. 420 (Bankr.S.D.N.Y.1983)).

The Lake Plaintiffs argue that the present case is distinguishable from *Lomas* because Plaintiffs' actions implicate only one current officer, Thomas Lynch, who is named as a defendant in the Escott but not the Lake action. If the test were interference with the activities of the named individual defendants, Plaintiffs' point would be well taken. But that is not the test. The harm to the Debtor is the diversion of its resources and effort from reorganization to the defense of prepetition actions. The Escott action may well impose an added burden on the Debtor by increasing the burden on Mr. Lynch, who has an important full-time role in Debtor's business and reorganization effort. But even if Mr. Lynch were not named a defendant in the Escott action, the evidence shows that prosecution of these suits would seriously impair Debtor's "breathing spell" and its reorganization.

Under these circumstances it is appropriate to temporarily stay further activity in Plaintiffs' actions until Debtor has had a reasonable breathing space in which to reorganize. The Court's order in conformity with this opinion is attached.

### INJUNCTION

A memorandum of opinion having been issued on the Debtor's motion for preliminary injunction in this adversary proceeding,

IT IS HEREBY ORDERED that

1. John H. Escott, Sr. and John H. Escott, Jr. be, and they hereby are, enjoined from presenting evidence, pursuing discovery, or proceeding in any manner in Case No. 4–92CV–00468 entitled *Escott v. Veale* now pending in the United States District Court for the Northern District of Texas.

2. Ross D. Lake and W. Dean Buckley be, and they hereby are, enjoined from presenting evidence, pursuing discovery, or proceeding in any manner in Case No. 91–2087 entitled *Lake v. Sudbury, Inc.* now pending in the United States District Court for the Central District of Illinois.

3. The injunctions issued herein shall terminate on September 30, 1992 unless extended by further order of this Court.