In re AMERICAN FILM TECHNOLOGIES, INC., Debtor.

AMERICAN FILM TECHNOLOGIES, INC., Plaintiff,

v.

Joseph TARITERO, Defendant.

Bankruptcy No. 93–1207.
Adv. No. A–93–138.

United States Bankruptcy Court, D. Delaware.

Nov. 10, 1994.

James L. Patton, Jr., Brendan Linehan Shannon, Young, Conaway, Stargatt & Taylor, Wilmington, DE, for American Film Technologies, Inc.

Francis A. Monaco, Jr., Joseph J. Bodnar, Walsh and Monzack, P.A., Wilmington, DE, Andrew M. White, Alisa M. Morgenthaler, T. Joshua Ritz, Christensen, White, Miller, Fink & Jacobs, Los Angeles, CA, for Joseph M. Taritero.

## MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

### INTRODUCTION

Before the court in this adversary proceeding is a motion by the Debtor plaintiff for a preliminary injunction to enjoin the defendant from prosecuting a California state court action against former and present directors of the Debtor plaintiff. Because I find that the Debtor plaintiff could suffer irreparable harm from the indemnification and collateral estoppel implications of the California state court action, I grant the motion.

### FACTS

Joseph M. Taritero ("Taritero"), a former officer and director of the Debtor, American Film Technologies, Inc. ("AFT"), commenced a breach of contract action against AFT in February 1993 in the California Superior Court. Taritero alleges in his cause of action against AFT that AFT breached an employment agreement with Taritero, despite AFT's reaffirmation of the agreement at a November 20, 1992 special meeting of AFT's board of directors. Taritero amended his complaint in June 1993 to add a second cause of action against AFT and to add twenty-eight individuals as additional defendants on that second count. The individual defendants are current and former directors of AFT. In the second count Taritero alleges that the defendants committed fraud when they made false and misleading material statements and representations of fact at such meeting—that is, that AFT was reaffirming its employment agreement with Taritero—to induce Taritero to resign as an officer and director of AFT.

AFT is a Delaware corporation. Under its charter and bylaws, AFT is obligated to indemnify its officers and directors to the full extent permitted under the laws of the state of Delaware. Delaware law permits broad indemnification of corporate officers and directors, provided that the indemnification does not offend public policy.

On October 15, 1993, AFT filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 et seq. (the "Code"). The Code § 362(a) automatic stay, of course, precludes Taritero's prosecution of the California action against the Debtor. On November 2, 1993, the Debtor filed an adversary complaint seeking a declaration pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201,[1] that the automatic stay in Code § 362 stays the ongoing prosecution of the California action against the non-debtor directors, or alternatively, a preliminary and permanent injunction pursuant to Code § 105(a)[2] staying the prosecution of that action against the non-debtor defendants. The Debtor also filed a motion pursuant to Federal Rule of Bankruptcy Procedure 7065, requesting a temporary restraining order and preliminary injunction ordering Taritero to

---

**1.** 28 U.S.C. § 2201(a) provides in pertinent part:

In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

**2.** 11 U.S.C. § 105(a) provides:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

refrain from prosecuting the California action against the non-debtor directors and others pending a trial on the merits.

On November 5, 1993 the court issued a temporary restraining order enjoining Taritero from prosecuting the California case. Subsequently, the court signed a series of stipulations extending the TRO while the parties attempted to work out their differences. The last stipulation expired on September 6, 1994 and the Debtor has requested the entry of a preliminary injunction pending trial of the matter.

## DISCUSSION

In deciding whether to grant a preliminary injunction the court must consider the following: "(1) the likelihood that the plaintiff will prevail on the merits at a final hearing; (2) the extent to which the plaintiff is being irreparably harmed by the conduct complained of; (3) the extent to which the defendant will suffer irreparable harm if the preliminary injunction is granted; and (4) the public interest." *Merchant & Evans, Inc. v. Roosevelt Bldg. Products Co.,* 963 F.2d 628, 632–33 (3d Cir.1992), (citing *Opticians Ass'n of America v. Independent Opticians of America,* 920 F.2d 187, 191–92 (3d Cir.1990)). Considerations numbers (3) and (4) are easily addressed and are not seriously disputed. Taritero is not being asked to forego his prosecution against the individual defendants, only to delay it. Given the stipulated delay of 10 months, a further delay of limited duration will not cause Taritero irreparable harm. In the context of bankruptcy proceedings, the "public interest" element means "the promoting of a successful reorganization." *Gathering Restr., Inc. v. First National Bank of Valparaiso (In re Gathering Restr., Inc.),* 79 B.R. 992, 999 (Bankr. N.D.Ind.1986). It is "one of the paramount interests" of this court to assist the Debtor in its reorganization efforts. *In Re Gathering,* 79 B.R. at 1001. I find that a continuation of the stay will clearly promote the chances for a successful reorganization.

The elements of probable success on the merits and irreparable harm, in the context of this proceeding, are essentially a matter of whether AFT would be seriously adversely affected if the benefit of the automatic stay is not extended to the California action. For the reasons detailed below, I conclude that a denial of that extension would seriously adversely affect AFT's rights.

At the conclusion of the preliminary injunction hearing, I observed that I thought the indemnification and collateral estoppel issues were the overriding considerations in this matter and, accordingly, I requested the parties to make post-hearing submissions dealing with those issues. The facts here are not complicated and are not in dispute but the parties have cited conflicting authorities for their respective views as to whether a prosecution of the California case against the individual defendants has indemnification and collateral estoppel implications for AFT.

█ Collateral estoppel applies only where there is an identity of subject matter, issues and parties in the previous litigation. *See generally, Parklane Hosiery Co., Inc. v. M. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). Two separate trials on the California fraud count—one against the non-debtor defendants and one against the Debtor—necessarily will involve the same subject matter—that is, the alleged misrepresentations made at the November 20, 1992 board meeting. Additionally, the breach of contract action against AFT will also involve facts identical to those in the fraud action because the two causes of action are merely different legal theories cloaking the same facts. The majority of the allegations in the first count relate to the discussions which occurred at the November 20, 1992 board meeting. The second count incorporates all allegations in first count and states that the defendants made "the aforementioned false and misleading material statements and representations of fact," thus suggesting that the fraud action is merely a restatement, against additional defendants, of the breach of contract action. Complaint ¶ 30. Paragraph 1 of the amended California complaint characterizes the nature of the entire complaint as an "action aris[ing] out of a fraudulent scheme perpetrated by" AFT and its board of directors. Complaint ¶ 1. Thus, the identity of subject matter and issues is beyond debate.

A more important issue is whether an identity of parties exists between the directors and AFT which would expose AFT to collateral estoppel in subsequent litigation if the California action is permitted to proceed against the directors. The amended California complaint claims are against the individual defendants solely in their capacities as directors of AFT. Nothing in the complaint suggests that the directors were motivated in their allegedly fraudulent conduct by any interest other than that of AFT or suggests that the directors were acting in any capacity other than that as directors of AFT. If the directors are found liable for fraudulent misrepresentations, the liability will be as agents of AFT. Such liability exposes the corporation to both vicarious liability under the doctrine of respondeat superior, see, Donsco, Inc. v. Casper Corp., 587 F.2d 602 (3d Cir. 1978), and the risk of being collaterally estopped from denying liability for its directors' actions, see, U.S. v. Ward, 618 F.Supp. 884 (E.D.N.C.1985) (corporation was collaterally estopped from denying its knowing participation in illegal dumpings as a result of corporate officer's conviction for same); United States v. DiBona, 614 F.Supp. 40, 44 (E.D.Pa.1984) (because "[i]t seems but a truism to state that corporations may act only through persons," corporation collaterally estopped from denying civil liability under the False Claims Act after corporate officers pled guilty to making such statements in previous criminal trial); Gellman v. Paul, 85 F.R.D. 357, 359 (S.D.N.Y.1980) (suit against corporation's chief executive officer on contract entered into by corporation dismissed because, among other things, corporation's absence prejudiced corporation by exposing it to collateral estoppel liability). See also, Smoky Mountain Enterprises, 283 N.C. 373, 377, 196 S.E.2d 189, 192 (1973) (plaintiff corporation bound by judgment in prior suit by president/sole shareholder of corporation because he and corporation had same proprietary or financial interest in case and were equally concerned with determination of questions of fact or law).

■ The automatic stay affords protection only to debtors and does not extend to "co-tortfeasors," "joint obligors," "guarantors," "sureties," or other non-debtor "co-defen-

dants." Accord Maritime Electric Company v. United Jersey Bank, 959 F.2d 1194, 1204 (3d Cir.1991) ("[t]he clear language of Section 362(a) indicates that it stays only proceedings against a 'debtor'—the term used by the statute itself"). Nevertheless, numerous bankruptcy courts have issued preliminary injunctions, on collateral estoppel grounds, staying the prosecution of actions against non-debtor defendants who were officers and/or directors of the debtor defendants. For example, in In re Ionosphere Clubs, Inc., 111 B.R. 423, 435 (Bankr. S.D.N.Y.1990), aff'd in part, 124 B.R. 35 (S.D.N.Y.1991), the court enjoined an action against the debtor airline's codefendants, including the chairman of the board of directors, because a finding of liability as to the codefendants could extend to the airline and collateral estoppel could prevent it from litigating factual and legal issues critical to its defense in other proceedings. This same court extended the automatic stay to enjoin a security holders' class action suit against various employees and agents of a corporate debtor, noting the risk that the corporate debtor "would be found to be a controlling nonparty ... and thus could be collaterally estopped in subsequent suits from relitigating issues determined against its officers and directors." In re Johns–Manville Corp., 26 B.R. 420, 429 (Bankr.S.D.N.Y.1983), aff'd, 40 B.R. 219 (S.D.N.Y.1984), rev'd in part on other grounds, 41 B.R. 926 (S.D.N.Y.1984).

The same court's order which stayed an action against a corporate debtor's officers alleging that the officers made negligent or fraudulent misrepresentations concerning the corporation's financial condition to a creditor of the corporation was upheld in In re Lomas Financial Corp., 117 B.R. 64 (S.D.N.Y.1990). The district court reasoned that the bankruptcy court had properly found that the debtor's reorganization efforts would suffer irreparable harm if the action continued as "[i]t [was] not possible for [the corporation] to be a bystander to a suit which may have a $20 million issue preclusion effect against it." Id. at 66–67.

Similarly, in Sudbury, Inc. v. H. Escott, 140 B.R. 461 (Bankr.N.D.Ohio 1992) the court enjoined fraud actions against present

or former officers and directors of a corporate debtor until completion of the reorganization effort, in part because collateral estoppel concerns would require the debtor to defend the actions as fully as if it were a named defendant. That court reasoned that because the claims in both actions were generally premised on defendants' alleged fraud while acting as officers and directors of the Debtor, "it [was] not plausible that the defendants ... could be found liable except on facts that would impose liability on the Debtor." *Id.* at 463.

In one of the leading cases on this issue, *A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 999 (4th Cir.1986), *cert. denied,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986), the court extended the application of Code § 362 to non-debtor parties "when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment against the debtor." It reasoned that to refuse application of the automatic stay in such a situation defeats the very purpose and intent of the Code. Other courts have adopted this approach. *See, e.g., Gilman v. Continental Airlines, Inc.,* C.A. No. 91–151–SLR (D.Del. June 28, 1993) (affirming bankruptcy court order declaring that automatic stay applied to certain actions against non-debtor defendants because, among other things, bankruptcy court had found identity of interest between debtor and non-debtor defendants which made debtor the "real defendant"); *Sudbury,* 140 B.R. at 464 ("continued prosecution of plaintiff's actions would violate the spirit ... of section 362 of the Bankruptcy Code"); *North Star Contracting Corp. v. McSpedon,* 125 B.R. 368 (S.D.N.Y.1991) (action brought against corporate debtor's president for alleged misrepresentation found to violate automatic stay because situation presented "special circumstance" where identity of interest exists between debtor and third-party non-debtor to the extent that debtor is real party defendant and that judgment against third party non-debtor will directly affect debtor); *In re Ms. Kipps, Inc.,* 34 B.R. 91, 93 (Bankr.S.D.N.Y. 1983) (labor union prevented from pursuing suit against corporate debtor's president for

failure to make certain employee benefit contributions because proof required to substantiate claims against debtor identical to that required to hold president liable).

In one of its memoranda on the motion, Taritero argues: "As to [AFT's] assertion that the lawsuit will affect the rights of AFT and expose AFT to the risk of collateral estoppel, there is nothing that would preclude the Debtor from attending the remaining depositions and otherwise participating in the litigation to protect its interests." Doc. # 5, pp. 5–6. But this is precisely the point. To avoid the collateral estoppel effect, AFT must participate in the defense of the state court case. That requires AFT to do precisely what the automatic stay is intended to excuse it from doing. In the words of the *Sudbury* court, "the continued prosecution of Plaintiffs' actions would violate the spirit ... of section 362 of the Bankruptcy Code." *Sudbury,* 140 B.R. at 464.

Taritero argues that because its cause of action against the non-debtor defendants charges them with fraud, they are not entitled under Delaware law to indemnification by AFT and, therefore, the indemnification issue should not be considered here. But this argument assumes that Taritero will prevail on the fraud claim—a claim which the defendants deny. What if Taritero only succeeds in proving a simple breach of contract? In that event, the individual defendants presumably would be entitled to indemnification. In *Sudbury* the court rejected this same argument where the plaintiffs were pursuing a fraud claim against present and former officers and directors of the debtor.

> [T]he extent and scope of the Debtor's indemnity obligations are unclear; their clarification could itself be the subject of dispute and litigation. Whatever the ultimate answer to these questions, prudence dictates that the Debtor treat its obligations as very real and substantial ...

*Id.,* at 463.

In *Sudbury* the plaintiffs also attempted to distinguish *A.H. Robins* on the grounds that *A.H. Robins* did not involve a disputed indemnity and to distinguish *In re Lomas* on the grounds that the *Sudbury* plaintiffs' ac-

tion did not involve a present officer of the debtor and that at least some of the individual defendants were wealthy and were the real targets of the action. Essentially the same position is taken here by Taritero. The *Sudbury* court found these distinctions missed the fundamental point of the cited cases.

There are in the present case questions as to the enforceability of the indemnities which are not reflected in the opinions in *[A.H. Robins]* or *Lomas.* Moreover, there is no evidence that Plaintiffs do not view the individual defendants as real targets. But these distinctions miss the fundamental similarities between this case and those. Plaintiffs' actions are based upon their pre-petition transactions with the Debtor, and Debtor will be compelled to defend them because of legitimate indemnity and collateral estoppel concerns as fully as if it were a named defendant.

*Sudbury,* at 464.

In his post-hearing submission, Taritero alternatively argues that "normal principals of collateral estoppel are altered by bankruptcy" and therefore the doctrine should not be a basis for enjoining prosecution against the non-debtor parties in the California action. In support of this contention, Taritero cites to three bankruptcy court cases, *In re Metal Center, Inc.,* 31 B.R. 458, 463 (Bankr. D.Conn.1983); *In re Rubenstein,* 105 B.R. 198, 202 (Bankr.D.Conn.1989); and *In re Murall, Inc.,* 118 B.R. 400, 401–02 (Bankr. D.S.C.1989). I am not persuaded by these cases that normal principles of collateral estoppel are altered in bankruptcy cases.

In *In re Metal,* the court discussed the concept of collateral estoppel generally and its binding effect on an indemnitor who had proper notice and an opportunity to participate in an indemnity action but failed to do so. The court held, however, that bankruptcy law "alters" the binding effect of collateral estoppel stating that:

[f]ollowing the logic that the automatic stay is intended to bar litigation against the debtor and the debtor's estate to collect prepetition debts, and armed with the assumption that the law would not permit an indirect result which was expressly barred, a debtor, on notice of an action by

his creditor ... [against a person to whom he is liable], might justifiably decline to join that litigation on the basis that the automatic stay must be read to protect him and his estate from being drawn into litigation or from being bound by the results thereof. Since he cannot be compelled to appear in nonbankruptcy court to defend his creditor's or guarantor's claim, absent relief from the automatic stay, principles of law, which might otherwise bind the debtor, are of no effect in a bankruptcy context.

*In re Metal,* 31 B.R. at 463.

Interestingly, although the *In re Metal* court refused to stay the action against the debtor's indemnitee pursuant to section 362(a)(1), it denied the plaintiff's motion to sever and remand to the state court an action against the non-debtor, finding in justification that "severing and remanding [the plaintiff's action against the indemnitee to the state court for trial and judgment would] ... potentially expose[s] Gardner [the indemnitee] to inconsistent judgments." *In re Metal,* 31 B.R. at 463.

The *In re Murall* court seriously misstates the *A.H. Robins* holding to advance its position that collateral estoppel would not apply in a bankruptcy automatic stay issue, stating that the *A.H. Robins* court "cited with favor *In re Metal Center* ... which addressed the binding effect of such a judgment." *Id.* at 401. However, the court in *A.H. Robins* repudiated *In re Metal's* position on collateral estoppel, stating:

The *[In re Metal]* court reached [its decision] because in its opinion the judgment in the suit against the third-party would not be binding on the bankruptcy court. Of course, if the indemnitee, who has suffered a judgment for which he is entitled to be absolutely indemnified by the debtor, cannot file and have allowed as an adjudicated claim the actual amount of the judgment he has secured but must submit his claim for allowance in the bankruptcy proceeding with the prospect that his claim may not be allowed in the full amount of the judgment awarded in favor of him, the indemnitee will be unfairly mulcted by inconsistent judgments and his contract of

indemnity in effect nullified. *We do not accept such reasoning with its shocking result and would find a stay under [362](a)(1) acceptable.*

*A.H. Robins,* 788 F.2d at 999–1000 (emphasis added).

Moreover, the *In re Murall* court is factually dissimilar to the instant situation. In *In re Murall,* the Chapter 11 debtor filed a motion for extension of automatic stay to stay court actions against the guarantors of the debtor's mortgage debt. *In re Murall,* 118 B.R. at 401. In refusing to grant such motion, the court noted that "unusual circumstances" warranting the extension of the stay to encompass actions against the guarantors of the debtor's mortgage did not exist because there was no entitlement to absolute indemnification between the debtor and the guarantors nor was there a common law right of subrogation. *Id.* at 402.

In the present case however, there is an entitlement to indemnification between the debtor and its officers and directors. In *A.H. Robins,* the court held that "unusual circumstances" warranting a stay exist when there is "such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor ... [a]n illustration of such a situation would be a suit against a third-party who is entitled to absolute indemnity by the debtor...." *A.H. Robins,* 788 F.2d at 999.

In *In re Rubenstein* the court relied upon its own opinion in *In re Metal.* In *In re Rubenstein,* the court refused to enjoin the commencement of a state court action against the debtors' mortgagee for foreclosure fees incurred by the State court committee because, pursuant to *In re Metal,* the debtor would not be bound by a state court judgment in favor of the committee against the debtor's mortgagee even though the debtor is ultimately liable for the mortgagee's costs of foreclosure. *In re Rubenstein,* 105 B.R. 198, 204 (Bankr.D.Conn.1989). The court reasoned that because fee determinations are subject to different criteria in state and bankruptcy courts, the mortgagee would

not be subject to inconsistent applications of a single standard. *Id.* at 203. However, unlike *Rubenstein,* the matter before this court involves third-party indemnification issues and does not concern the reimbursement of foreclosure costs.

Of the two positions advanced in *In re Metal* and *A.H. Robins,* the latter is both more equitable and practical. The *In re Metal* holding, that the Code § 362(a) automatic stay suggests that collateral estoppel should not apply to a debtor, sufficiently protects only the interests of the debtor while potentially ignoring and impairing the interests of the debtor's indemnitees and similarly situated parties. In contrast, the *A.H. Robins* holding can consistently and effectively protect the interests of both the debtor and its indemnitees by properly enjoining non-debtor actions on the grounds of collateral estoppel. Applying the *A.H. Robins* holding maintains a consistent and uniform interpretation of collateral estoppel as it applies to all areas of the law. Based on an assumption as to an implication of the automatic stay order, the *In re Metal* court creates an exception to the doctrine which can produce inconsistent outcomes. I am not persuaded by the reasoning of the *In re Metal* court and I decline to follow it.

Taritero argues that even if collateral estoppel were applicable in this situation, "case law is absolutely uniform that third-party suits are permitted to proceed if the nondebtor is a joint tortfeasor with the debtor or where the nondebtor's liability rests upon his own breach of duty," citing to *In re Crazy Eddie Securities Litigation,* 104 B.R. 582, 584 (E.D.N.Y.1989). However, that case is factually different to the present situation. In *In re Crazy Eddie,* the debtor and nondebtor parties were not bound by any statute or contract imputing the liability of the nondebtor parties to the debtor nor were there any rights of indemnification between the debtor and the non-debtor parties. *In re Crazy Eddie,* 104 B.R. at 584.

Taritero also argues that he "is not aware of any authority where collateral estoppel prevented a third-party suit from proceeding against non-debtors alleged to have committed fraud, even where the debtor may be

held jointly liable." However, Taritero overlooks *In re Lomas Financial Corp.*, 117 B.R. 64, (S.D.N.Y.1990). In *Lomas*, a Chapter 11 debtor sought injunctive relief barring an action for fraudulent misrepresentation against certain of its officers, and the bankruptcy court entered the injunction. *Id.* at 65. On appeal, the District Court held that the principles of collateral estoppel supported the entry of an injunction, stating that " 'it is not possible for the debtor to be a bystander to a suit which may have a $20 million issue preclusion effect against it in favor of a prepetition creditor.' " *Id.* at 67. *See also, Sudbury,* 140 B.R. 461.

Citing *In re Bicoastal Corp.*, 117 B.R. 696, 697–98 (Bankr.M.D.Fla.1990), Taritero also argues that "[a]cts of fraud which the former directors are alleged to have committed will not be imputed to AFT nor will it affect AFT's breach of contract defense." *Bicoastal* appears to support the proposition but the facts of that case are not sufficiently detailed to compare it with the situation here. In any event, the proposition is not supported by the authorities that I find persuasive. It is well established that the fraud of an agent of a corporation is imputed to the corporation when the agent's fraudulent conduct was (1) in the course of his employment, and (2) for the benefit of the corporation. *Rochez Brothers, Inc. v. Rhoades,* 527 F.2d 880, 884 (3d Cir.1975); *Commodity Futures Trading Com'n v. American Metals,* 775 F.Supp. 767, 778 (D.N.J.1991). This rule applies "even if the officer's conduct was unauthorized, effected for his own benefit but clothed with apparent authority of the corporation, or contrary to instructions." *Rochez Brothers,* 527 F.2d at 884. Indeed, the Supreme Court has held that "a principal is liable for an agent's fraud though the agent acts solely to benefit himself, if the agent acts with apparent authority." *A.S.M.E. v. Hydrolevel Corp.,* 456 U.S. 556, 566, 102 S.Ct. 1935, 72 L.Ed.2d 330 (1982). *See also U.S. v. O'Connell,* 890 F.2d 563, 568–89 (2d Cir.1989) (holding that corporation should be held liable under False Claims Act for fraud of agent who acts with apparent authority even if corporation received no benefit from agent's fraud). The rationale for this rule is that "a corporation can speak and act only through its agents and so must be accountable for any acts committed by one of its agents within his actual or apparent scope of authority and while transacting corporate business." *Rochez Brothers,* 527 F.2d at 884. Under the apparent authority theory, "liability is based upon the fact that the agent's position facilitates the consummation of the fraud, in that from the point of view of the third person the transaction seems regular on its face and the agent appears to be acting in the ordinary course of the business confided to him." *A.S.M.E.,* 456 U.S. at 566 (quoting Restatement (Second) of Agency § 261 (1957)).

In the present situation Taritero's California complaint avers facts that could, if true, hold AFT liable for the allegedly fraudulent actions of its officers and directors. The complaint plainly alleges that AFT's directors were acting within the scope of their employment. The alleged fraudulent misrepresentations made to induce Taritero to resign as an officer and board member of AFT prior to the expiration of his employment contract were made at a special meeting of the AFT board of directors. Such corporate actions as trying to induce an executive to resign are not uncommon in the business world. Clearly, the directors of a corporation have the authority to hire and fire company personnel. Moreover, Taritero concedes that at least some of AFT's agents committed fraudulent acts within the scope of their employment:

> each defendant referred to herein as DOES 1 through 20, inclusive, is and at all times relevant was, the agent, employee, partner, joint venturer, subsidiary or affiliate of each of the other defendants and, in doing the things alleged herein, was acting within the course and scope of such position with the permission, knowledge and consent of each of the other defendants.

California Complaint, ¶ 15.

It would therefore be reasonable to conclude from the point of view of Taritero, a seasoned executive, that the board's action of inducing Taritero to resign would seem "regular on its face;" and the board would "appear[ ] to be acting in the ordinary course of

the business confided to [it]." Therefore, even if AFT's directors acted solely for the benefit of themselves, they still acted with apparent authority of AFT thereby subjecting AFT to liability.

Even if I were to accept Taritero's argument that AFT does not have any liability for the ultra vires fraudulent conduct of its officers and directors, I again point out that the fraud allegation remains to be proven. The evidence against the individual defendant may amount to nothing more than conduct orchestrating an intentional breach of the employment contract. But at that point legal and factual issues would be binding on AFT under the collateral estoppel doctrine. Furthermore, I believe that if Taritero proves his fraud case against the individual defendants, a fortiori, that proves a breach of contract case against AFT.

In conclusion, based on the "unusual circumstances" rationale of *A.H. Robins* and *In re Lomas*, I conclude that because of the identity of subject matter, issues and parties involved, the California case squarely implicates AFT's indemnification obligations and exposes it to collateral estoppel prejudice if it does not participate in that case. This conclusion justifies the invocation of Code § 105 to issue a preliminary injunction order staying Taritero prosecution of the California case in order to make effective the automatic stay of Code § 362(a).

I make one final observation. The automatic stay is not a permanent bar. I note that this case is now over a year old and that a plan and disclosure statement has recently been filed. It seems to me that this Chapter case may be approaching the point where AFT's liabilities, if any, arising out of the Taritero causes of action should be determined.

### ORDER

For the reasons stated in the Memorandum Opinion of this date, the Debtor plaintiff's motion for a preliminary injunction is granted so that the defendant is enjoined from prosecuting its California state court action (Case No. BC 072333) against the present and former directors of the Debtor plaintiff. This injunction shall remain in ef-fect until further order of this court terminating or modifying the injunction.