**In re CONTINENTAL AIRLINES, et al., Debtors.**

**M. Barnett GILLMAN, et al., Appellants,**

**v.**

**CONTINENTAL AIRLINES, INC., and Continental Airlines Holdings, Inc., Appellees.**

**Bankruptcy Nos. 90–932 to 90–984. Civ. A. No. 91–151–SLR.**

United States District Court, D. Delaware.

June 28, 1993.

Thomas E. Ross, U.S. Trustee, Philadelphia, PA.

Robert K. Beste, Jr. of Biggs & Battaglia, Wilmington, DE, and Stuart D. Wechsler and Andrew D. Friedman of Wechsler, Skirnick, Harwood, Halebian & Feffer, New York City, for appellants.

James L. Patton, Jr. and Laura Davis Jones of Young, Conaway, Stargatt & Taylor, Wilmington, DE, and Paul P. Welsh and Kenneth J. Nachbar of Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for appellees.

Peter J. Walsh of Bayard, Handelman & Murdoch, Wilmington, DE, and Robert J. Rosenberg, Fredric J. Zepp and Bennett J. Murphy of Latham & Watkins, New York City, for Official Committee of Unsecured Creditors of Continental Airlines, Inc., et al.

### *MEMORANDUM OPINION*

SUE L. ROBINSON, District Judge.

## I. INTRODUCTION

Appellants bring this appeal to challenge an order of the United States Bankruptcy Court for the District of Delaware declaring that the automatic stay of section 362 of the Bankruptcy Code (the "Code"), which was imposed by operation of law upon the filing of appellees' petitions for reorganization, is applicable to certain actions commenced by appellants and enjoining appellants from further prosecuting those actions.

## II. JURISDICTION

The parties to this appeal concede, and the Court hereby finds, that subject matter jurisdiction to review the bankruptcy court's final ruling in this adversary proceeding is present. *See* 28 U.S.C. §§ 158(a) and 1334(b); *In re Collated Products Corp.*, 121 B.R. 195, 200 (D.Del.1990), *aff'd without op.*, 937 F.2d 596 (3d Cir.1991).

## III. FACTUAL BACKGROUND

On December 3, 1990, Continental Airlines, Inc. ("Airlines"), Continental Airlines Holdings, Inc. ("Continental") and numerous related entities filed petitions for reorganization under Chapter 11. Pursuant to section 362(a)(1) of the Code, the filing of these petitions for reorganization automatically stayed "the commencement or continuation" of any judicial proceedings against the filing Continental entities "that w[ere] or could have been commenced before" said filing date.

### A. The Adversary Proceeding

On January 17, 1991, Continental and Airlines commenced an adversary proceeding seeking to stay and enjoin prosecution of three class action lawsuits, namely, *Gillman v. Scandinavian Airlines System, et al.*, No. 90–CIV–7542 (MJL) (the "*Gillman* action"); *Freberg v. Lorenzo, et al.*, No. 90–CIV–7828 (the "*Freberg* action"); and *Debora v. Lorenzo, et al.*, No. 90–CIV–7901 (the "*Debora* action"). The adversary proceeding was brought against the named class action plaintiffs and their attorneys.

On February 22, 1991, following discovery, pre-trial briefing, an evidentiary hearing, and argument by counsel, the bankruptcy court ruled in appellees' favor. (D.I. 7 at A169–A173) The court, after making its ruling from the bench, agreed to receive a proposed form of order from appellees' counsel. (D.I. 7 at A172–A173) Appellants did not ask to be heard as to the form of order nor did they request leave to file their own proposed form of order. It appears that appellees submitted their proposed form of order on Febru-

ary 25, 1991, which the bankruptcy court then entered on the following day. (D.I. 7 at A172–A173 and A176–A177) The record indicates that appellants failed to seek permission to be heard as to the form of order entered in this case, either before or after its entry by the court.[1] The instant appeal was filed on or around March 20, 1991.

### B. The *Gillman, Freberg* and *Debora* Actions

The *Gillman* action was originally filed in the United States District Court for the District of New Jersey as a shareholder derivative suit against Continental, various Continental directors and others. (D.I. 7 at A234–A235) Following dismissal of the New Jersey action on jurisdictional grounds (D.I. 7 at A234–A245), the action was refiled in the United States District Court for the Southern District of New York on November 30, 1990, only several days before Continental's Chapter 11 filing. (D.I. 10 at 4) Following Continental's filing of its bankruptcy petition, plaintiff in the *Gillman* action, apparently recognizing that the section 362 automatic stay precluded further prosecution of that action, filed an Amended Complaint which deleted Continental and any other related entities as parties-defendant to that action. The Amended Complaint, however, still listed several former and then current officers and directors of Continental. Gillman's Amended Complaint also sought to convert the action from a shareholder derivative action to a Continental Holdings' shareholders' class action.

According to appellants,

[t]he *Gillman* action alleges that [the Continental Holdings' directors and officers and others named as defendants in that litigation] breached their fiduciary duties to [Gillman] and Continental[ ] [Holdings'] other shareholders by negotiating and approving a series of transactions pursuant to which [Scandanavian Airline Systems ("SAS")] illegally purchased Continental's corporate offices from [Continental Di-

---

1. Appellants now challenge the form of order entered by the bankruptcy court on grounds that it is "extremely broad" (D.I. 8 at 2) and "grant[s] an injunction of unlimited scope and duration." (D.I. 8 at 3)

rector Frank] Lorenzo and [Continental Officer Robert] Snedeker for over $30 million. Pursuant to this transaction, SAS purchased Jet Capital directly from Lorenzo and Snedeker for approximately $21 million and indirectly provided Lorenzo and Snedeker with an additional $17 million by using Continental as a conduit for such funds—i.e., the non-debtor defendants therein caused Continental to issue 2.25 million shares of common stock to SAS in exchange for $31.5 million and then paid out more than half of such "proceeds" to Lorenzo and Snedeker to buy-out their employment contracts and purchase their Continental stock and options at an exorbitant premium above market price.

(D.I. 8 at 4–5 (citation to record omitted)) Plaintiff in the *Gillman* action claims that the Continental director and officer defendants, as well as other named defendants, "breached the fiduciary duties that [they] owed to Continental's public shareholders and seeks monetary damages from defendants, to be distributed directly to the shareholders." (D.I. 17 at 5)[2]

The *Freberg* and *Debora* actions are shareholder class actions lawsuits brought by and on behalf of purchasers of Continental stock during the three-month period immediately prior to Continental's Chapter 11 filing. (D.I. 8 at 5) In these actions, which are brought against certain former and then current officers and directors of Continental, it is alleged that the defendants "issued or caused Continental to issue false statements concerning Continental's consideration of the possibility of filing a petition in bankruptcy in violation" of securities laws and regulations. (D.I. 8 at 5–6) It is further asserted that

said "misrepresentations inflated the price of Continental securities, amounting to a 'fraud-on-the-market.'" (D.I. 8 at 6) The *Freberg* action and *Debora* action plaintiffs seek to hold the former Continental officer and director defendants jointly and severally liable for these alleged violations of law. (D.I. 8 at 6)

## IV. STANDARD OF REVIEW

The proper standard of review to be applied by a district court reviewing the rulings of a bankruptcy court turns on the nature of the issues presented on appeal. Factual determinations of the bankruptcy court are entitled to deference and are not reversed unless found to be clearly erroneous. Bankruptcy Rule 8013; *In re Morrissey*, 717 F.2d 100, 104 (3rd Cir.1983). Legal conclusions of the bankruptcy court are subject to plenary review by the district court and are considered *de novo* on appeal. *Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81, 84 (3d Cir.1988).

Appellees contend that this appeal presents two matters for review, one legal and one factual, and that the legal issue is subject to a *de novo* review by this Court whereas the factual findings are subject to the clearly erroneous standard of review.[3] The Court agrees.

## V. DISCUSSION

As related above, the bankruptcy court entered an order in this case precluding appellants from prosecuting certain lawsuits which, as currently plead, seek damages from various non-debtor parties and entities.

---

2. Subsequent to entry of the bankruptcy court's order precluding Gillman from further prosecution of the *Gillman* action during pendency of the automatic stay, the Official Committee of Unsecured Creditors of Continental and Airlines (the "Committee") moved for permission to bring an action challenging the same transactions that are the subject of the *Gillman* action. According to the record, the Committee was permitted to pursue this action. (D.I. 27) It further appears that the Committee's efforts resulted in a settlement of the claims asserted therein and that Continental's bankruptcy estate received or will receive a total of over $7.5 million under the terms of the settlement agreement. (D.I. 27 at 2) Appellees contend (D.I. 27 at 1–2) that the *Gill-*

*man* action was mooted by this settlement since, as even appellants have conceded, the *Gillman* action and the action commenced by the Committee are "virtually identical." (D.I. 20) The Court declines to pass on the question of whether or not the *Gillman* action was mooted by settlement of the "virtually identical" action brought by the Committee since that clearly is a matter for the district court in the *Gillman* action to decide.

3. Appellants failed specifically to address the standard of review applicable to the issues raised by this appeal. (D.I. 8 and D.I. 17)

The court relied upon Code sections 362(a) and 105(a) in granting this relief. The legal issue presented by this appeal is whether the bankruptcy court had authority under applicable precedent to enter such an order.

■ Appellants contend that "the courts in this Circuit and elsewhere have held that the protections of Section 362(a)(1) do not apply to non-debtors." (D.I. 8 at 11 (citing cases)) Appellants further contend that the bankruptcy court "had no precedent for adopting an extraordinary exception to the general rule ... that Section 362(a)(1) of the Code does not apply to non-debtors." (D.I. 8 at 14) Likewise, appellants assert in their reply brief that the "bankruptcy court lacked authority under section[ ] 362(a) of the Code to issue the injunction against the class actions at bar." (D.I. 17 at 9) The bankruptcy court's legal determination that it had authority to extend the automatic stay to actions against non-debtors is subject to *de novo* review on appeal.

The Code's automatic stay provision "is one of the fundamental debtor protections provided by the bankruptcy laws." S.Rep. No. 95–989, 95 Cong., 2d Sess. 54–55, U.S.Code Cong. & Admin.News 1978, pp. 5787, 5840–41 (1978). The automatic stay is designed "to protect the debtor from an uncontrollable scramble for its assets in a number of uncoordinated proceedings in different courts, to preclude one creditor from pursuing a remedy to the disadvantage of other creditors, and to provide the debtor and its executives with a reasonable respite from protracted litigation, during which they may have an opportunity to formulate a plan of reorganization for the debtor." *A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 998 (4th Cir.), *cert. denied,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986). Consistent with congressional intent and with the fundamental purposes underlying the automatic stay, numerous federal courts have held that, under appropriate circumstances, the automatic stay may be extended beyond direct actions against the debtor to lawsuits against non-debtors. Specifically, courts in this circuit and others have held that while the automatic stay ordinarily applies only to actions against the debtor itself, it is properly extended to actions against non-debtors where an identity of interest exists between the debtor and non-debtor defendant such that the debtor is the real party defendant and the litigation will directly affect the debtor and, more particularly, the debtor's assets or its ability to pursue a successful plan of reorganization under Chapter 11.[4] On the basis of these authorities and the well-reasoned principles of law enunciated therein, the Court rejects appellants' contention that the bankruptcy court lacked legal authority to extend the automatic stay to appellants' class action lawsuits against non-debtor parties.

■ Appellees' next contention is that the bankruptcy court erred in concluding that record evidence in this case supports the bankruptcy court's findings that the *Gillman, Freberg* and *Debora* class action lawsuits give rise to an identity of interest between Continental and the non-debtor defendants, that Continental is the real party defendant therein and that those litigations will directly affect Continental, its assets and its ability to pursue a successful plan of reorganization.

Regarding the *Freberg* action and the *Debora* action, evidence before the bankruptcy court provided ample support for its conclusion that Continental is the real party defendant to those actions and that this class action litigation was commenced against parties other than Continental solely in an effort to circumvent the automatic stay. In particular, the substantive allegations raised in the pleadings filed by plaintiffs in *Freberg* and *Debora* demonstrate that Continental is the alleged wrongdoer in those actions and that there is an identity of interest between Con-

---

4. *See, e.g., A.H. Robins Co., supra; In re Litchfield Co. of South Carolina Ltd. Partnership,* 135 B.R. 797 (W.D.N.C.1992); *In re North Star Contracting Corp.,* 125 B.R. 368 (S.D.N.Y.1991); *Maaco Enterprises, Inc. v. Corrao,* 1991 WL 255132, 1991 U.S.Dist. LEXIS 17212 (E.D.Pa. 1991); *Algemene Bank Nederland, N.V. v. Hall-* *wood Indus., Inc.,* 133 B.R. 176 (W.D.Pa.1991); *In re Lomas Financial Corp.,* 117 B.R. 64 (S.D.N.Y.1990); *In re Zenith Laboratories, Inc.,* 104 B.R. 659, 664–66 (D.N.J.1989); *Sudbury, Inc. v. Escott,* 140 B.R. 461 (Bankr.N.D.Ohio 1992); *In re Circle K Corp.,* 121 B.R. 257 (Bankr. D.Ariz.1990).

tinental and the parties-defendant therein. The substantive allegations of wrongdoing set forth in the *Debora* Class Action Complaint, which are nearly identical to those of the *Freberg* action, are as follows:

22. On Friday, October 19, 1990, attorneys from ... Continental's bankruptcy counsel assembled and spent the weekend drafting all necessary papers for an immediate filing under Chapter 11.... Various meetings of the Board of Directors of Continental were held over the weekend at which meetings the Board considered the possibility of filing for Chapter 11 as a means of coping with the mounting financial crisis. On October 24, 1990, Continental denied that a team of lawyers worked through the weekend to prepare bankruptcy papers and denied published reports that its Board of Directors considered filing for Chapter 11 bankruptcy protection. A spokesman for Continental stated: "The Company has no intention of filing for Chapter 11."

\* \* \* \* \* \*

24. Despite the October 24, 1990 denial that the Continental Board was considering filing for bankruptcy protection, in truth and fact Continental was considering a bankruptcy filing along with other options but sought to deceive the market as to such fact.

25. The following articles were published in which Continental sought to assure the market and investors that the option of filing for protection under the bankruptcy laws was not being considered as a solution to its liquidity problems:

(a) in an article entitled "Continental Air Said to Have Weighed, Rejected Chapter 11", appearing on the *Dow Jones New Tape* at 7:45 a.m., a company spokesman was quoted as stating, "this company has no intention of filing Chapter 11";

(b) an article entitled "Continental Air Denies Chapter 11 report" appearing on the *Dow Jones New Tape* at 10:14 a.m., stated:

Continental Airlines today vigorously denied published reports that it may file for Chapter 11 in light of a nationwide fuel crises.

"This company has no intent to seek protection under these codes. We have streamlined our management, and like the rest of the industry, are considering other prudent business steps to assist during the fuel crisis. However, Chapter 11 is not one of the means we intend to take," said a Continental spokesperson.

(c) an article entitled, "Continental Bankruptcy Study Seen", appearing in The New York Times, provided:

Art Kent, a spokesman for Continental, denied the reports. "The Company has no intention of filing for Bankruptcy protection," he said.

26. On October 25, 1990, the Company again sought to quell suspicion that Continental might file for protection under the bankruptcy laws in the future. In an article entitled, "Continental Hopes to Sell Planes, Not International Routes, to Raise Cash", appearing in the *Wall Street Journal* on October 25, 1990, Hollis Harris, Continental's Chairman and Chief Executive Officer, was quoted as stating:

"The board met and we all decided unanimously that [Chapter 11 protection] is not for Continental and we are not going to pursue that," Mr. Harris said.

27. Thereafter, and until Continental actually filed for bankruptcy reorganization on December 3, 1990, such action was continually under consideration as a solution to Continental's worsening liquidity and other financial problems, which were exacerbated by the high price of jet fuel. Moreover, throughout this period, various actions were taken in furtherance of the impending filing.

28. On December 3, 1990, Continental announced that it had filed for protection under the bankruptcy laws. Given Continental's prior denials, the market reacted with surprise. The price of Continental's common stock dropped from $3⅝ per share to $2.00, an approximate decline of 40%,

while the price of Continental's bonds fell nearly 50%.

(D.I. 11, Exhibit 6)

These allegations reveal that Continental is the real target of the *Freberg* and *Debora* litigation and that these actions were commenced against parties other than Continental, to the exclusion of Continental itself, in an effort to circumvent the mandatory directives of the automatic stay. On the basis of this and other evidence presented at trial, the bankruptcy court correctly concluded that "Continental is the real defendant [to these actions]. The complaints and the [allegations] pointed to by counsel for Continental look to Continental and cite Continental's actions, inferring that Continental made certain [misleading] statements." (A170) The bankruptcy court's conclusion in this regard was not erroneous. Indeed, appellants fail to cite any record evidence supporting a conclusion to the contrary. This evidence standing alone provided a sufficient basis for the bankruptcy court's determination that the automatic stay, until properly lifted, precludes prosecution of the *Freberg* and *Debora* actions.

In support of its decision that the automatic stay applies to the *Freberg* and *Debora* actions as well as the *Gillman* action, the bankruptcy court also relied upon evidence indicating that prosecution of these actions would interfere with Continental's efforts to successfully reorganize and would adversely affect Continental's assets. (D.I. 7 at A170–A172)

Facts before the bankruptcy court support its conclusion that, since the parties-defendant to these actions include various Continental officers and directors who are heavily involved in Continental's reorganization efforts and since discovery in those actions would impose burdens both on the directors and on Continental, defense of these actions would substantially detract from the directors' reorganization efforts and would hinder Continental's ability to emerge successfully from bankruptcy under a confirmed plan of reorganization. (D.I. 7 at A110–A121 and A145–146)

Moreover, record evidence indicates that Continental's assets likely would be depleted as a result of prosecution of these actions. The bankruptcy court relied upon this evidence as well in reaching its decision to enter the order on appeal. Pursuant to its corporate bylaws, Continental is legally obligated to indemnify, to the fullest extent permitted by Delaware law, its directors and officers for any judgments against them in connection with these lawsuits challenging actions taken by them in their official capacity and to advance litigation expenses to its officers and directors for their defense of these actions. (D.I. 7 at A105–A106; D.I. 11 at B23) Moreover, as part of the transactions challenged in the *Gillman* action, Continental agreed to "transactional indemnities" pursuant to which Continental agreed to "indemnify and hold harmless" both Lorenzo and Snedeker as to all damages and losses, including attorneys' fees, arising out of any suit brought against them in any capacity pertaining to said challenged transactions. (D.I. 11 at B71–B75 and B107–B112; D.I. 7 at A106–A108, A131–A132, A135–A144)[5]

Hence, the Court rejects appellants' contention that the bankruptcy court erred in determining, on the basis of these well-supported findings, that the automatic stay applies to the *Gillman, Freberg* and *Debora* actions and that further prosecution of these cases properly was enjoined.[6]

---

5. Regarding indemnity, appellants contend, *inter alia*, that the existence of Continental's indemnity obligations "does not diminish property of the estate" because "Continental has no insurance policy" and therefore "an asset of the estate will not necessarily be depleted by the prosecution of the class actions at bar." (D.I. at 15–17) This contention and appellants other contentions in this regard are without merit. In the absence of insurance, Continental will be forced to shoulder these indemnity obligations itself, thereby directly impacting Continental's assets.

6. Appellants' argue that the standards for entry of an injunction under Code section 105(a) were not met here. This argument is without merit. Appellants' contention, which is factual in nature, is unsupported by the evidence of record. Appellants focus on the requirement that a party seeking injunctive relief demonstrate a high probability of irreparable harm in the absence of the requested injunction. (D.I. 8 at 22–25) "In a bankruptcy context, irreparable harm may be discerned if the action sought to be enjoined would so consume the time, energy and re-

Appellants' final argument challenges the scope of the order entered by the bankruptcy court at the conclusion of the adversary proceeding. Appellants contend that the order was overly-broad because it enjoined prosecution of the *Gillman, Freberg* and *Debora* actions for an indefinite period and because the court enjoined prosecution of these actions as "against persons and entities with virtually no connection to the Debtors' reorganization." (D.I. 8 at 28)

Regarding the *Freberg* and *Debora* actions, the Court finds this argument unpersuasive. As already discussed, these actions clearly target Continental itself as the alleged wrongdoer and can only be interpreted as representing an effort to circumvent the automatic stay. As such, these actions properly were enjoined to the same extent as any other litigation brought directly against Continental that was automatically stayed by section 362 until the lifting of the stay (either by operation of law or by order of the bankruptcy court upon the filing of a motion to lift).

Regarding the scope of the injunction as to the *Gillman* action, it appears that the order on appeal (D.I. 7 at A176–A177) could have been more narrowly-tailored so as to strike an appropriate balance between protecting the interests of Continental while allowing prosecution of this action as against persons and entities unrelated to Continental and its related debtors. However, since appellants failed to make any effort to be heard as to the form of order entered by the bankruptcy court, and since this is a matter which should be presented in the first instance to the trial court, the Court declines to reach the issue. As appellants essentially concede, they are (and have been) free to move for an order lifting the automatic stay or narrowing its scope at any time.

## VI. CONCLUSION

For the reasons stated, the Court will affirm. An Order consistent with this Memorandum Opinion shall issue.

---

sources of the debtor that it would substantially hinder the debtor's reorganization effort." *Sudbury, Inc.,* 140 B.R. at 465 (internal quotations and citations omitted). As already discussed, the bankruptcy court determined on the basis of rec-

ord evidence that prosecution of these class action lawsuits during the pendency of Continental's Chapter 11 case would interfere with its ability to reorganize successfully.