285 B.R. 679 (2002)
In re KMART CORPORATION, et al., Debtors.
El Puerto de Liverpool S.A. de C.V., Plaintiff,
v.
Servi Mundo Llantero, U.S.A., Inc., Servi Mundo Llantero S.A. de C.V., and Enrique Kanarek, Defendant.
Bankruptcy No. 02 B 02474, Adversary No. 02 A 01584.
United States Bankruptcy Court, N.D. Illinois, Eastern Division.
November 15, 2002.
*680 *681 Partrick S. Coffey, Chicago, IL, Mark S. Melickian (Gardner, Carton & Douglas), for Plaintiff.
Brian L. Shaw (Shaw Gussis Fishman Glantz & Wolfson), for Defendants.
John William Butler, Jr. (Skadden Arps Slate Meagher & Flom), Chicago, IL, for Debtors.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
JACK B. SCHMETTERER, Bankruptcy Judge.
Following trial on Plaintiff's Motion for Preliminary Injunction, and hearing on the submissions filed by the Debtors and official bankruptcy committees, the Court now makes and enters the following Findings of Fact and Conclusions of Law.

INTRODUCTION
Plaintiff, El Puerto Liverpool S.A. de C.V. ("Liverpool") is a Mexican corporation which had been a joint venturer of Chapter 11 bankruptcy Debtor Kmart, a Michigan company ("Kmart"), in formation of a Mexican entity Kmart Mexico, S.A. de C.V. ("Kmart Mexico"). Kmart and Liverpool each owned an interest in Kmart Mexico, which was incorporated in 1993. After execution of the original joint venture agreement, Kmart assigned its interest *682 to one of its subsidiaries VTA, Inc., a Delaware corporation ("VTA"). Kmart and VTA are now bankruptcy debtors in Chapter 11.
Liverpool filed the instant adversary, pursuant to Sections 362 and 105 of the Code, to stay a civil lawsuit in Hildalgo County, Texas which was initially filed against Kmart, Liverpool, Kmart Mexico, and Jose Ortega, a Kmart employee. That suit was initiated by Servi Mundo Llantero USA, Inc. ("Servi Mundo USA"), on behalf of Servi Mundo Llantero S.A. de C.V. ("Servi Mundo Mexico"), a Mexican corporation and its owner Enrique Kanarek ("Defendants"). Although, Defendants severed Kmart and its related entities in bankruptcy from the Texas suit, Liverpool asserts that its interests are so intertwined with those of Kmart that suit against it constitutes a suit against Kmart even. It contended that this Court should enjoin the Texas proceeding against it because the outcome could threaten property of the estate and concomitantly Debtor's successful reorganization. Kmart did not join or intervene in the instant Adversary proceeding, but appeared here through its pleading filed and its counsel's argument in support of Liverpool's motion for a preliminary injunction to prevent the Texas case from going to trial on November 12, 2002. It supported the Liverpool contention that results in the Texas case could harm the Debtor by being introduced in actions seeking joint venture liabilities and could thereby violate the automatic bankruptcy stay and impair Kmart's property interests. Kmart's support for injunctive relief was joined by filings by and arguments on behalf of the bankruptcy Official Committee of Unsecured Creditors, Official Committee of Equity Security Holders, and Official Financial Institutions' Committee.
In recognition of the impending Texas trial, the motion for preliminary injunction was set for trial on November 5, 6, and 8. At the conclusion of the trial on November 8th, a ruling was announced from the bench denying the Plaintiff's motion for injunctive relief and for entry of an injunction to protect Kmart's rights to bankruptcy stay protection under 11 U.S.C. § 362. No orders were then entered, pending completion of these Findings and Conclusions.
The following Findings of Fact and Conclusions of Law support the ruling and determination that Liverpool is not entitled to protection under Sections 105 and 362(a) of the Bankruptcy Code, and an order denying the requested injunction will now be entered. However, results in the Texas trial could be used against Kmart with the indirect effect of violating the bankruptcy stay under 11 U.S.C. § 362 and affecting Debtor's property interests. Kmart can be protected against such consequence and stay violation by an injunction preventing any parties to the Texas trial from using any findings or judgment reached in that case against Debtor. To avoid that result a permanent injunction is being entered under authority of 11 U.S.C. §§ 105 and 362 to bar either Texas litigant from ever using findings or judgment entered in the Texas case against the Kmart bankruptcy debtors.
Liverpool argued here that injunction to delay trial against it was necessary to protect Kmart from consequences that might indirectly deprive Debtor of its property interests and stay protection. However, the injunction against all Texas litigants prevents that consequence while allowing the Texas trial to proceed.
Plaintiff has failed to demonstrate that it and Debtor are so necessarily connected in their interests that only a delay of trial against Liverpool can protect the Debtor's *683 interest, but injunction relief to protect the automatic stay rights of Kmart and other debtors will supply such protection. There is no need or justification to delay the Texas trial.

FINDINGS OF FACT
The Parties
1. Plaintiff, El Puerto Liverpool S.A. de C.V. ("Liverpool") is a Mexican corporation.
2. Defendant, Servi Mundo Llantero U.S.A., Inc. ("SML USA"), is a Texas corporation.
3. Defendant, Servi Mundo Llantero, S.A. de C.V. ("SML MEX"), is a Mexican corporation.
4. Defendant, Enrique Kanarek ("Kanarek," who, collectively with SML USA and SML MEX may sometimes hereinafter be referred to as the "Defendants") is an individual who previously resided in Hidalgo County, Texas and now resides in Florida.
5. Kmart Corporation ("Kmart") is a Michigan corporation.
6. VTA, Inc. ("VTA") is a Delaware corporation, and a wholly owned subsidiary of Kmart.
7. Jorge Ortega ("Ortega") is an individual who is an employee of Kmart and who resides in California.
8. Kmart, as well as many of its subsidiaries and related corporations including VTA (collectively the "Debtors"), are currently debtors-in-possession in Chapter 11 bankruptcy cases pending in the United States Bankruptcy Court for the Northern District of Illinois under jointly administered case no. 02 B 02474. The Debtors filed their voluntary petitions under Chapter 11 of title 11 U.S.C. (the "Bankruptcy Code") on January 22, 2002 (the "Petition Date"). The automatic stay protecting Debtors under 11 U.S.C. § 362 has not been modified to permit actions against Debtors in the Texas litigation discussed below.
9. Liverpool is not a subsidiary of, affiliate of, or otherwise related to, Kmart.
10. Liverpool is not a debtor under any Chapter of the Bankruptcy Code.
11. Liverpool is a separate and distinct legal entity from Kmart with no common ownership or management.
12. Liverpool, Kmart, VTA and Ortega were co-defendants in a lawsuit pending in the 92nd District Court (the "Texas District Court"), Hidalgo County, Texas as case no. C-3263-97-A ("Case 3263-A"), which suit was commenced in 1997 ("the Texas Suit").
13. Defendants herein are the plaintiffs in Case 3263-A.
14. On June 12, 2002, on motion of Servi Mundo the Texas District Court entered an order severing Defendants' claims against Kmart, VTA and Ortega into a separate case bearing the no. C-3263-97-A(1) ("Case 3263-A(1)"), which case has been stayed due to the Debtors' bankruptcy cases. As such, Ortega, Kmart, VTA (or any Debtor) are no longer parties to Case 3263-A and any claims asserted by or against them cannot be adjudicated within Case 3263-A. The Texas District Court Judge has refused to stay Defendants' claims against Liverpool because of Kmart's and VTA's bankruptcy filings.
15. Defendants' have filed claims against Kmart and VTA ("Debtors") in their respective bankruptcy cases on account of the claims that were asserted against Kmart and VTA in Case 3263-A(1).
16. The claims asserted against Kmart, VTA and Ortega in Case 3263-A(1) included: (a) fraudulent inducement, (b) civil *684 conspiracy, (c) common law fraud, (d) constructive fraud, (e) promissory estoppel, and (f) tortious interference. More details are set forth below.
17. The claims asserted against Liverpool in Case 3263-A included: (a) fraudulent inducement, (b) negligent misrepresentations, (c) negligence/malice, (d) civil conspiracy, (e) common law fraud, (f) constructive fraud, and (g) promissory estoppel. More details are set forth below.
18. In response to Defendants' complaint in the Texas District Court, Liverpool has argued that because Kmart and it are independent corporations, liability cannot be imputed between them.
19. For purposes of this action, details of the alleged transactions between the parties are not recited because the merits of pending litigation in Texas and Mexico are not to be decided here. However, recital of the legal basis claimed for recovery in Texas is pertinent because it demonstrates that such litigation could result in findings and judgment that might harm Kmart Debtors indirectly, and therefore allowing the Texas case to proceed without some protection to the Debtors  even at their absence from trial because they were severed  could indirectly harm Debtors and therefore could indirectly violate the automatic stay.
20. Servi Mundo originally brought claims for breach of contract, fraud, negligent misrepresentation, negligence, gross negligence, civil conspiracy, promissory estoppel, tortious interference, alter ego, joint venture and/or single business enterprise.
21. Kmart, VTA and Ortega filed answers in the Texas lawsuit asserting general and special denials, affirmative defenses and a cross-claim for contribution and indemnity against Liverpool. Liverpool filed an answer asserting general and special denials, affirmative defenses and a cross-claim for contribution and indemnity against Kmart, VTA and Ortega. (V.Compl.¶¶ 26-27.)
22. Following severance of Debtors, the Texas District Court Judge refused to stay the proceedings and trial against co-defendant Liverpool. Liverpool remains the sole defendant in trial set to begin on November 12, 2002.
23. On August 2, 2002, Servi Mundo filed its Eighth Amended Complaint in the Texas lawsuit. While this pleading excluded any claim for relief against Kmart, VTA and Ortega, many allegations and legal theories advanced in earlier pleadings against those parties remain unchanged.
24. For example, Servi Mundo's Eighth Amended Complaint alleges, in summary of pertinent pleadings, that:
Kmart and Liverpool entered into a joint venture and that the joint venture created Kmart Mexico and Comercial KM. That employees, agents and/or representatives of the alleged joint venture made certain material representations to Servi Mundo to induce it to commit substantial financial resources to operate automotive service centers and, that they would provide Servi Mundo with the license to use the Kmart name. In particular, Servi Mundo complained that Ortega, a Kmart officer, made representations concerning the projected growth of the Mexican venture, which Servi Mundo relied on to its detriment.
A special relationship was created by Liverpool and Kmart Mexico's possession of special knowledge regarding the Mexican venture that was unknown to Servi Mundo, and the concealment and or failure to disclose this information (by the agents, employees, or representatives of the joint venture) constitutes negligence.

*685 Liverpool conspired with Kmart Corporation and other agents, representatives and employees of the joint venture to perpetrate a fraud against Servi Mundo regarding Kmart Mexico's planned operations, Liverpool along with Kmart corporation and other agents, representatives and employees of the joint venture furthered their conspiracy by one or more acts, including with employees like Ortega.
Kmart Mexico, Liverpool and the joint venture (Kmart knowingly participated in fraudulent conduct by manipulating their employees to deceive Servi Mundo).
Kmart Mexico, Liverpool and other agents, representatives and employees of [sic] joint venture failed to disclose material facts that were within their exclusive knowledge.
Whenever it is alleged that Liverpool did any act or thing, it is meant that the authorized officers, agents, servants, employees, attorneys or representatives of Liverpool and the joint venture between Liverpool and Kmart corporation did such act or thing and the conduct is imputed to Liverpool. Further and in the alternative, Servi Mundo asserts that the acts and omissions were done with the full authorization of Liverpool or were done in the normal course and scope of employment or responsibility of Liverpool and the joint venture's officers, agents, servants, employees, attorneys, representatives. Moreover, to the extent the acts were not initially authorized, the acts have been ratified and Liverpool is liable under theories of joint and several liability.
Liverpool and Kmart agreed to work in partnership with or as a joint venture with Kmart corporation to carry on their retail merchandising business operations in Mexico. Each of the joint venturers profited because of this joint venture arrangement. Servi Mundo asserts that each participant of the joint venture is liable for the torts committed by the agents, representatives and employees of the joint venture companies. Liverpool is jointly and severally liable because of this joint venture or partnership arrangement.
25. On or about October 23, 2002, Servi Mundo filed pleadings in the Texas lawsuit in response to a motion for summary judgment filed by Liverpool, contending that:
(a) Plaintiffs allege the Defendant Liverpool agreed to work in partnership, joint venture, and single business entity with K-Mart Corp., K-Mart Mexico, and Comercial KM, to carry on retail merchandising business operations in Mexico;
(b) Plaintiffs assert that each participant is therefore liable for the torts committed by the agents, representative and employees of the partnership, joint venture, and single business enterprise companies. Liverpool, as a named Defendant, is therefore, is [sic] jointly and severally liable;
(c) There is substantial evidence to establish an agency relationship by virtue of Liverpool's, K-Mart Corp. and K-Mart Mexico [sic] formed a partnership, joint venture, and single business enterprise
* * *
Because all three entities worked towards the same common goal and shared the same financial and personnel resources for administrative and operational purposes, they should therefore be treated as being involved in a partnership/joint venture/single business entity . . . ;
(d) [T]he corporation forms between the [sic] K-mart, and Liverpool for that *686 matter, [sic] with K-Mart Mexico were intended to fade from the very beginning K-Mart Mexico was formed;
* * *
K-Mart Mexico was completely dominated by employees of Liverpool and K-Mart; and
(e) It also asserted that interests of Liverpool are "intertwined" with the interests of Kmart.
26. On April 24, 2002, Liverpool filed a motion in the bankruptcy case seeking by motion the almost identical injunction relief sought in this proceeding. On May 9, 2002, the judge presiding denied the April 24, 2002, Motion after a contested hearing, but only on the procedural basis that Liverpool could not request injunctive relief pursuant to motion practice without filing an Adversary complaint as required by Rule 7001 Fed.R.Bankr.P.
27. By the end of May 2002, mediation regarding the claims asserted in Case 3263-A had failed. On July 30, 2002, the Texas District Court entered an Order setting Case 3263-A for final pretrial conference on November 1, 2002, and for trial November 6, 2002. Subsequently, an order was entered moving the trial date to November 12, 2002. The Texas District Court Judge indicated that no further continuances will be granted.
28. On October 16, 2002, Plaintiffs filed the instant complaint (the "Adversary Complaint"), and on October 17, 2002, filed the subject motion (the "Injunction Motion"), initially presented in court on notice on October 29, 2002. Kmart and three official committees in the Kmart bankruptcy supported the motion through statements filed and argument of counsel, though they did not intervene in the Adversary.
29. Many contested proceedings and appeals proceeded through the Texas state trial and appeal courts wherein Liverpool's several efforts to obtain trial delay or avoid trial were rejected. The Texas Appellate Court for the 13th District denied Plaintiff's most recent appeal, and mandated that trial on Case 3263-A be held. That mandate has not been withdrawn. Plaintiff petitioned the Texas Supreme Court's ruling, but the Texas District Court's ruling denial of its special appearance, but the Texas Supreme Court has yet to respond to that petition.
30. In or about September 2001, Plaintiff commenced a new lawsuit against Defendants in Mexico (the "Mexican Suit") alleging that Defendants' suit against it in Texas was frivolous and seeking substantial damages on account of its defense of Case 3263-A. The Mexican Suit has not been stayed.
31. If the November 12, 2002, trial date is stayed, Defendants will be prejudiced because (a) they will be forced to wait an indefinite period before they can have their day in court and seek economic recovery (because testimony concerning the intent of Debtors to seek their Plan confirmation by mid-year 2003 express speculative hopes rather than certainty); (b) days of trial preparation both of counsel and witnesses will be wasted at least partially and will need to be redone; (c) the travel plans of many out-of-town witnesses, including experts, will be cancelled or postponed at the last minute; (d) as a result of (b) and (c), Defendant will incur substantial legal and expense costs; and (e) it would give Liverpool an opportunity to seek judgment in the Mexican Suit before going to trial in the Texas suit, and thus have a related issue decided in its favor in the recent Mexican Suit. Also, the Texas trial court would be obliged to reset a lengthy trial to some future indefinite *687 dates and could not decide upon new trial dates until the bankruptcy confirmation process will be completed.
32. After Case 3263-A(1) was severed from Case 3263-A, neither Kmart, its counsel or any of its personnel have appeared in either Case 3263-A or Case 3263-A(1). Any testimony of current or former Kmart personnel intended to be used at the trial on Case 3263-A has already been elicited under oath by deposition. Defendants do not intend to call or otherwise require Kmart, VTA and any other Debtor or any of their personnel to appear at or participate in the trial on Case 3263-A, though they may offer the deposition testimony thereof. Plaintiff has not issued any trial subpoenas or any pending discovery requests to Kmart, VTA or any of their personnel in Case 3263-A. Debtors' counsel conceded on the record of this proceeding that none of the Debtors' personnel or employees is expected to take part in the trial on Case 3263-A.
33. No significant disruption will be caused to Kmart personnel through need to supply trial witnesses to attend trial, since their depositions have been taken. Since both of the Texas case litigants have already filed substantial claims in bankruptcy against Debtor, the possibility of trial and judgment in Texas that might relate to the very claims already on file should not result in bad publicity or concern among employees or customers that are materially greater than publicity and concerns caused already by filing of the pending claims in bankruptcy.
34. Defendants offered to stipulate that no findings of fact or conclusions of law rendered in Case 3263-A will be binding upon Kmart, VTA or any of the Debtors so as to avoid any such findings or conclusions impacting against Kmart in indirect violation of the automatic bankruptcy stay.
35. Neither Kmart, VTA or any other of the Debtors have contractually guaranteed payment of any debt owed by Liverpool to Defendants. Liverpool clearly has no absolute and/or contractual right of indemnification from Kmart, VTA or any of the other Debtors on account of any judgment rendered against Liverpool in Case 3263-A, although it might seek indemnification of such judgment under Texas law or other nonbankruptcy law.
36. Kmart, VTA and the other Debtors deny that they would have any liability to Liverpool on account of any judgment rendered against Liverpool in Case 3263-A and would oppose any indemnification or contribution claims that may be asserted against them on account of such a judgment against Liverpool. Liverpool has denied the existence of any joint venture liability between it and Kmart or VTA in Case 3263-A.
37. Facts set forth in the Conclusions of Law will stand as additional Findings of Fact. Conclusions of Law stated in the Findings, if any, will stand as additional Conclusions of Law.

CONCLUSIONS OF LAW
Jurisdiction and Venue
Core jurisdiction over the present matter lies here under 28 U.S.C. §§ 1334(a) which gives exclusive jurisdiction to the District Court over cases arising in or under the Bankruptcy Code (title 11 U.S.C.) and under 28 U.S.C. § 157(a)(b)(2)(G). Issues in this case arise under 11 U.S.C. §§ 362 (the automatic stay) and § 105 (giving authority to enter orders "necessary or appropriate to carry out the provisions of this title" including orders to protect stay protections). This case is referred here under the standing referral of District court Internal Operating *688 Procedure 15(a). Venue is appropriate in this District. 28 U.S.C. § 1409(a).
The Automatic Stay
Section 362(a) lies at the heart of the Code. It provides one of the most fundamental protections afforded to debtors by preventing the piecemeal destruction of the debtor's property. Without the stay provided by 11 U.S.C. § 362(a), there would be a race to the courthouse to claim assets of the debtor, and a successful reorganization would be impossible. The automatic stay protects the debtor's assets while giving the debtor breathing room so that it can reorganize. Section 362(a) bars "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title. . . ." 11 U.S.C. § 362(a).
By its own terms, Section 362(a) only applies to debtors under title 11. Fox Valley Construction Workers Fringe Benefit Funds v. Pride of the Fox Masonry and Expert Restorations, 140 F.3d 661, 666 (7th Cir.1998); Pitts v. Unarco Industries, Inc., et al., 698 F.2d 313, 314 (7th Cir.1983).
However, courts have extended the application of Section 362(a) to nondebtors where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." In re Fernstrom Storage and Van Co., 938 F.2d 731, 736 (7th Cir.1991) (quoting A.H. Robins Co. v. Piccinin, 788 F.2d 994, 999 (4th Cir.1986)). In A.H. Robins, the court held that nondebtor co-defendants of the debtor were entitled to enjoin proceedings against them where the co-defendants were indemnified by the debtor and were also insured under the debtor's insurance policy. Id. at 1007-08. The thrust of the court's opinion was that Section 105 empowered the trial court to enjoin actions that would frustrate or potentially thwart the debtor's ability to reorganize. Id. at 1003-08.
Authority in this Circuit has adopted this rule and articulated two exceptions to the general rule that bars extension of the stay to nondebtors: the first is where there is sufficient identity between the debtor and nondebtor such that the litigation against the nondebtor threatens property of the estate, and the second is where the continuation of the proceedings against the nondebtor could cause irreparable harm to the debtor by diverting resources need for its reorganization. Fernstrom, 938 F.2d at 736. Cases illustrating the first exception include situations where the debtor has an absolute duty to indemnify the nondebtor either by contract or operation of law or where the costs of the nondebtor's defense are borne by the debtor. See Trimec, Inc. v. Zale Corporation, 150 B.R. 685, 687 (N.D.Ill.1993) (staying proceeding against a joint venturer where the debtor was a guarantor of joint venturer); In re Eagle-Picher Industries, Inc., 963 F.2d 855, 860 (6th Cir.1992) (upholding injunction where debtor had to indemnify its executives and reimburse legal cost); A.H. Robins, 788 F.2d at 1007 (same); In re American Film Technologies, 175 B.R. 847, 850-51 (Bankr.D.Del.1994) (enjoining suit against officers of debtor because of indemnification and collateral estoppel).
Contribution claims between parties might in some cases create a sufficient identify of interest to warrant staying litigation against nondebtors. See A.H. Robins, 788 F.2d at 1005, 1008; In re Continental Airlines, 177 B.R. 475, 479-81 *689 (D.Del.1993). However, cases applying that principle generally find indemnification against debtor's assets a necessary consequence not a mere unlitigated possible claim.
Another exception is illustrated by cases where the debtor's key personnel are diverted from the reorganization by the demands of discovery related to the third-party suit. Id. at 481 (D.Del.1993) (enjoining suit against officers of debtor which could distract debtor from reorganization); In re Sudbury, Inc., 140 B.R. 461, 465 (Bankr.N.D.Ohio 1992) (irreparable harm results when resources of debtor are consumed in third-party litigation). However, it is important to note that joint torfeasors who are independently liable for third-party claims are not covered by the automatic stay. Fox Valley, 140 F.3d at 666; A.H. Robins, 788 F.2d at 999 (citation an quotation omitted); C.H. Robinson Co. v. Paris & Sons, Inc., 180 F.Supp.2d 1002, 1017, (N.D.Iowa 2001).
Here, Liverpool must show that Kmart will be irreparably harmed if the Texas suit is allowed to proceed. It did not rely on the precedents focusing on common insurance policies (and indeed none were proven here), but attempted to meet its burden by showing identity between it and Kmart because the pleadings in the Texas case make it clear that Kmart is a target of that suit and by arguing that Liverpool is entitled to indemnification from Kmart. Moreover, Liverpool asserted that the Texas case will have the practical effect of disrupting Kmart's reorganization. However, the evidence adduced at trial does not support those arguments.
There Is No Identity Between Liverpool and Kmart
The instant case is readily distinguishable from precedents where courts have found identity between a debtor's interest and those of the nondebtors. Servi Mundo has not tried to target any debtor indirectly by suing its officers. On its motion the Texas court severed all entities and individuals related to Kmart from the Texas suit. Hence, Kmart has no obligation to fund the litigation cost of the Texas case. Under Texas law, the findings of the suit to be tried may not necessarily bind Kmart under the doctrine of res judicata or collateral estoppel. See Webb v. Persyn, 866 S.W.2d 106, 107 (Tex.Ct.App.1993) (res judicata only applies to claims that were actually litigated); Mann v. Old Republic National Title Insurance Co., 975 S.W.2d 347, 350 (Tex.Ct.App.1998) (collateral estoppel only applies to issues litigated between the parties which were essential to judgment).
The claims asserted against Liverpool in the Texas lawsuit should not properly be stayed under 11 U.S.C. § 362(a) unless adverse findings or inferences made against Liverpool could be imputed to Kmart by operation of law and therefore would indirectly effect the debtor its assets, or its ability to pursue a successful plan of reorganization. Servi Mundo's claims premised on theories of joint venture, agency, civil conspiracy, partnership, and enterprise liability make it implausible that Liverpool could be found liable except on facts that would impose liability on Kmart if findings and judgment in the Texas case could be used subsequently against Kmart. However, Servi Mundo has agreed to stipulate that it will not use any findings derived from the trial against Kmart, and this Court has authority under § 105 to prevent such use by either party.
It is appropriate to exercise that authority because findings in the Texas case might otherwise indirectly be offered against Kmart at a later date. Moreover, Liverpool itself should be precluded from using the trial to lay a foundation for its *690 own eventual joint enterprise claim in bankruptcy against Kmart. Liverpool's argument that it will be harmed by such an order is without merit. Nothing in the Code allows creditors that are sued outside of bankruptcy to use their defeat in nonbankruptcy litigation to enhance their claims against the debtor at the expense of other creditors.
However, Liverpool and the Debtor do not share sufficient identity of interest to invoke on behalf of Liverpool either the protections of the automatic stay or a discretionary injunction under § 105 of the Bankruptcy Code. GAF Corp. v. Johns-Manville Corp., 26 B.R. 405, 413 (Bankr.S.D.N.Y.1983); American Imaging Services, Inc. v. Eagle-Picher Industries, Inc. (Eagle-Picher Industries, Inc.), 963 F.2d 855, 862 (6th Cir.1992).
Liverpool has failed to show that it has an absolute right to be indemnified by Kmart either under contract or by operation of law. It concedes that there is no indemnification agreement under the joint venture contract between the parties. Moreover, Kmart has not undertaken any obligation as a guarantor or insurer of any party to that suit. Liverpool's claim for contribution rests on a common law claim under its theory of joint enterprise liability. But such liability is not automatic and under Texas law Liverpool must establish four factors to sustain such a claim: (1) an agreement, express or implied among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right to control. Texas Dept. Of Transportation v. Able, 35 S.W.3d 608, 613 (Tex.2000). Thus, issues as to Liverpool's claim against Kmart will be resolved through the normal claims process in Kmart's pending bankruptcy.
Liverpool also claims a statutory right to contribution from Kmart. However, the express language of the statute governing contribution claims under Texas law states that the statute does not apply to claims under common law. Texas Civil Practice & Remedies Code § 32.001. Further, the statute only applies to a co-defendant "against whom judgment is also rendered." Id. at § 32.002. Thus, given that Kmart has been severed from the Texas proceeding, there appears to be no right of contribution under that statute either by or against it.
The duplicative or multiple litigation that may result as a consequence of the Debtors' bankruptcy cases and the severance of Debtors' claims against Kmart, VTA and Ortega from the Defendants' claims against Liverpool is a result under the Bankruptcy Code and a by-product of bankruptcy law. Klaff v. Wieboldt Stores, Inc., 1988 WL 142163 *5 (N.D.Ill.) (J. Rovner), citing Lynch v. Johns-Manville Sales Corp., 710 F.2d 1194 (6th Cir.1983).
Any hardship placed on the nondebtor Liverpool from its becoming the sole defendant in Case 3263-A as a result of the Debtors' bankruptcy filings is not relevant to the Court's consideration of whether relief should be granted pursuant to the Adversary Complaint or the pending Motion. Williford v. Armstrong World Industries, Inc., 715 F.2d 124, 126-27 (4th Cir.1983) (stay only available to debtors).
In light of the forgoing, Liverpool has failed to show that sufficient identity exists between it and Kmart to justify extending the automatic stay to the Texas proceeding.
The Texas suit Will Not Interfere With Kmart's Reorganization
Likewise, Liverpool has not proven that the trial will jeopardize Kmart's reorganization by siphoning away resources. The *691 uncontroverted evidence shows that Kmart has not participated in the trial since being severed from the case. Servi Mundo has shown that it will not call any Kmart employees to testify and that it will not make any further discovery request on the Debtor. Further, it appears that Liverpool is unlikely to request any further burdensome discovery from Kmart given the impending trial date.
Finally, there is no merit to the argument that a judgment entered against Liverpool might threaten Kmart's reorganization. According to Kmart, the bad publicity surrounding a judgment against Liverpool could undermine the confidence of its creditors and employees. However, this perceived threat is speculative at best. It is equally likely that a judgment against Liverpool might benefit Kmart because it could lessen the likelihood that Servi Mundo would pursue its claim in the bankruptcy case. Moreover, the balance of equities does not favor delaying Servi Mundo's trial because it could potentially have an adverse psychological effect on Kmart's constituents. In sum, Liverpool has not shown that the trial threatens to irreparably harm Kmart.
Other Issues
1. Merits
Although Liverpool argued the merits of issues in the Texas case, merits of the claims asserted in Case 3263-A(1) and Case 3263-A are not relevant to consideration here of whether relief should be granted pursuant to the Adversary complaint or the pending Motion. Authorities addressing the possibility of extending the automatic stay to protect nondebtors do not address success on the merits of the underlying substantiative nonbankruptcy suit, let alone such merits as a basis to decide whether or not to stay a proceeding.
2. Rooker-Feldman
The Texas District Court's previous discretionary decision not to impose subject Case 3263-A to a discretionary stay because of Kmart's, V.A.'s and the Debtor's bankruptcy cases does not under the Rooker-Feldman Doctrine (and contrary to Defendant's argument) prohibit this Court from deciding whether to impose a discretionary stay Downs v. Westphal, 78 F.3d 1252, 1256 (7th Cir.1996), because that doctrine applies to final state court judgments, not interlocutory rulings, Manley v. City of Chicago, 236 F.3d 392 (7th Cir.2001).
3. Mexican Case
It is at least possible that judgment in the Mexican case would provide impact on the Texas case if the latter case is stayed. Generally, under principles of international comity, U.S. Federal Courts will honor judgments entered in foreign countries if: [a] the participants were given the opportunity for a full and fair trial; [b] the trial was conducted before a court of a competent jurisdiction; [c] the proceedings followed due citation or voluntary appearance; [d] the trial was conducted upon regular proceedings; [e] the trial was under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of this country and those of other countries; and [f] there was no evidence of [i] fraud in procuring the judgment; [ii] prejudice in the country's system of laws; [iii] prejudice in the court; or [iv] any other reasons why comity should not be observed. Herbstein v. Bruetman (In re Bruetman), 259 B.R. 649, 669 (Bankr.N.D.Ill.2001), and cases cited, aff'd at 266 B.R. 676 (N.D.Ill.2001); see also, Hunt v. BP Exploration Co. (Libya) Ltd., 492 F.Supp. 885, 894 (N.D.Tex.1980); Compania Mexicana Rediodifusora Franteriza v. Spann, 41 F.Supp. 907 (N.D.Tex. *692 1941) aff'd at 131 F.2d 609 (5th Cir.1942) (enforcing Mexican judgment for costs against unsuccessful litigant in Mexican litigation). See also Society of Lloyd's v. Ashenden, 233 F.3d 473, 476-77 (7th Cir.2000) (generally discussing the "international concept of due process").
Case 3262-A is subject to Texas substantive and procedural law. Pursuant to the Texas Recognition Act, a court must recognize a foreign country's judgment assessing money damages unless the judgment debtor establishes one of the following grounds for non-recognition: (a) the judgment was rendered under a system that does not provide and impartial tribunal or procedure compatible with due process of law; (b) the foreign court did not have personal jurisdiction over the judgment debtor; (c) the foreign court did not have subject matter jurisdiction over the matter; (d) the judgment debtor did not receive sufficient notice of the proceeding; (e) the judgment was obtained by fraud; (f) the cause of action on which the judgment is based is repugnant to Texas public policy; (g) the judgment conflicts with another final, conclusive judgment, (h) the foreign proceeding is contrary to an agreement between the parties as to how the dispute was to be resolved; (i) if jurisdiction was solely based on personal service, the forum was seriously inconvenient, and (j) the foreign country does not recognize judgments rendered in Texas. Southwest Livestock and Trucking Company, Inc. v. Ramon, 169 F.3d 317, 321 (5th Cir.1999) (finding that District Court erred in refusing to enforce Mexican judgment on public policy grounds); see also TX Civ. Prac. & Rem. §§ 36.004, 36.0044, and 36.005.
Accordingly, delay of the Texas case might allow Liverpool to obtain a judgment in the recent Mexican case and thereby create new defensive issues for the Texas court and parties to further delay the much older Texas case. It would be an abuse of this Court's authority to use an injunction to aid Plaintiff in such a tactic.

CONCLUSION
A party seeking a preliminary injunction is required to demonstrate a likelihood of success on the merits, that it has no adequate remedy at law, and that it will suffer irreparable harm if the relief is not granted. Ty, Inc. v. Jones Group, 237 F.3d 891, 895 (7th Cir.2001) (citing Abbott Labs. v. Mead Johnson & Co., 971 F.2d 6, 11 (7th Cir.1992)). If the moving party can satisfy these conditions, the court must then consider any irreparable harm that an injunction would cause the nonmoving party. Ty, 237 F.3d at 895. Finally, the court must consider any consequences to the public from denying or granting the injunction. Id. Sitting as a court of equity, the court then weighs all these factors employing a sliding-scale approach. Abbott Labs., 971 F.2d at 12. That is, the more likely the plaintiff's chance of success on the merits, the less the balance of harms need weigh in its favor. Id.
Plaintiff has not shown entitlement to injunction and therefore has no likelihood of success in its Adversary proceeding herein, has not shown that it lacks adequate remedy it law (because it can defend itself in the Texas suit) and fails to show that necessity of defending itself in that case will give rise to irreparable harm apart from the possibility of losing. The Kmart debtors can and will be protected from any possible harmful consequences of the litigation.
Pursuant to the foregoing, it is apparent that Plaintiff has not met its burden to entitle it to an injunction to block the Texas trial against it. Therefore, its Motion for Preliminary Injunction will be denied. However, the Kmart debtors *693 have reasonable concern that findings and judgment in the Texas case against Liverpool might under Texas or other nonbankruptcy law be held binding against them under a theory of joint enterprise liability or otherwise  even though they were severed from the trial. Consequently, to protect Kmart debtors from such a consequence, an injunction must be entered under authority of 11 U.S.C. § 105 to implement and protect the automatic stay protection of debtors under 11 U.S.C. § 362. Such injunction will permanently bar both the Plaintiff and Defendants from ever asserting any findings of fact, conclusions of law, or judgment that may be entered in the Texas case against any of the Kmart parties in bankruptcy or in any court proceeding, provided however that the dollar amount of any judgment against Liverpool as to which it may seek to obtain indemnification against debtors now in bankruptcy or any of them may be used by it for the limited purpose of showing that a judgment has been entered against it.