## In re TRANS–SERVICE LOGISTICS, INC., Debtor.

### No. 03–53732.

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

Jan. 12, 2004.

---

**806**

Cheri B. Hass, David A. Riepenhoff, Downes, Hurst & Fishel, Columbus, OH, for the Defendants.

Robert J. Tscholl, Jennifer L. Arnold, Canton, OH, for the Plaintiff.

### ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION STAYING PROCEEDINGS IN FEDERAL DISTRICT COURT

CHARLES M. CALDWELL, Bankruptcy Judge.

On February 13, 2003, Marie Courtright ("Plaintiff") filed a lawsuit in the Court of Common Pleas located in Coshocton County, Ohio. The Defendants are Trans–Service, Logistics, Inc., William H. Waters, Jr. and Harley Robertson ("Defendants"). The Plaintiff was employed by Trans–Services Logistics, Inc. ("Debtor") on or about March 26, 2001. She performed functions related to the safety of its trucking operations. The employment of the Plaintiff ended in March 2002. William H. Waters, Jr. is the President and Chief Executive Officer, and Harley Robertson is the General Manager of the Debtor.

The five-count lawsuit contains allegations of violations of the Fair Labor Standards Act, the Equal Pay Act, Gender Discrimination pursuant to O.R.C. § 4112, violations of United States Department of Transportation safety regulations, and retaliation based upon Ohio Workmen's Compensation claims. In support of these counts the Plaintiff alleges: a) that she was not properly paid for all hours worked, including overtime; b) that she was paid at a lower rate than men; c) that she was not promoted based upon her gender; d) that she was constructively discharged due to her unwillingness to participate in violations of safety regulations, and e) that she was constructively discharged due to her unwillingness to engage in hiring practices that discriminated against drivers based upon the fact they had filed Workmen's Compensation claims. The Plaintiff seeks a judgment against the Defendants in the total amount of $75,000.00, including pay, compensatory and punitive damages. In addition, the Plaintiff seeks legal fees and costs.

■ On February 28, 2003, the lawsuit was removed to the United States District Court for the Southern District of Ohio. A voluntary petition for reorganization under chapter 11 of the United States Bankrupt-

cy Code ("Code") was filed on behalf of the Debtor on March 17, 2003. The bankruptcy filing served to stay the litigation as to the Debtor, but not Messrs. Waters and Robertson. 11 U.S.C. § 362(a)(1)and (3). The United States District Court directed the parties to obtain a ruling from this Court on whether the automatic stay should be extended to the two non bankrupt Defendants. As a result, on December 3, 2003, a Motion Requesting a Preliminary Injunction Staying the Proceedings in Federal District Court was filed, and on December 17, 2003, Plaintiff's Opposition was filed. A hearing was conducted on an expedited basis on December 19, 2003, in recognition that the United States District Court has deferred any further discovery until January 16, 2004, pending a ruling from this Court.

■■■ A review of the case law indicates that this Court has the authority to extend the automatic stay to non bankrupt parties, under limited circumstances. 11 U.S.C. § 105(a). Typically, courts have balanced the four factors considered for the issuance of injunctions; i.e., the movant's likelihood of success on the merits, whether the movant will suffer irreparable harm without an injunction; the relative harm to others, and the public interest. Essentially, however, it is incumbent upon the non bankrupt party to establish that there is a unity of interest with a debtor so that the reorganization efforts of the debtor would be irreparably harmed by the continuation of the litigation. *A.H. Robins Co., Inc. v. Piccinin (In re A.H. Robins Co., Inc.)*, 788 F.2d 994, 999 (4th Cir.1986), *cert. denied* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986); *Glassman v. Electronic Theatre Restaurants Corp. (In re Electronic Theatre Restaurants Corp.)*, 53 B.R. 458, 462 (D.N.D.Oh.1985); *Ochs v. Lipson, et al. (In re First Central Financial Corp.)*, 238 B.R. 9, 19 (Bankr.E.D.N.Y. 1999); *American Imaging Services, Inc. v.*

*Eagle–Picher Industries, Inc. (In re Eagle–Picher Industries, Inc.)*, 963 F.2d 855, 859–860 (6th Cir.1992); *El Puerto de Liverpool S.A. de C.V. v. Servi Mundo Llantero, U.S.A., Inc. et al. (In re Kmart Corp.)*, 285 B.R. 679, 688 (Bankr.N.D.Ill.2002); *Otero Mills, Inc. v. Security Bank & Trust (In re Otero Mills, Inc.)*, 25 B.R. 1018, 1021–1022 (D.N.M.1982).

In the instant case, it is asserted that the continuation of the litigation against the non bankrupt Defendants will cause irreparable harm to the Debtor. That harm includes the possibility that the deposition testimony may be binding upon the Debtor, and that because Messrs. Waters and Robertson are so closely associated with the Debtor, that discovery is in effect proceeding against the Debtor. It is also asserted that Messrs. Waters and Robertson may be entitled to indemnification from the Debtor. Finally, it is argued that the continuation of the litigation will unnecessarily divert the attention of Messrs. Waters and Robertson from their efforts to help reorganize the Debtor.

Mr. Waters, who has been the President and Chief Executive Officer for ten years, testified that he is currently responsible for general operations, including ensuring that the loads are profitable and reducing expenses. He also monitors safety operations. With the commencement of the chapter 11 proceeding, Mr. Waters testified that he reviews all of the bankruptcy pleadings, supplies information to his counsel such as equipment valuation, and has maintained contact with customers to reassure them of continued service after the filing. Mr. Waters testified that subsequent to the filing he has taken over supervision of the Maintenance Department. A significant amount of time has been devoted to implementing the new hours of service limitations imposed upon the trucking industry. Mr. Waters testified that he now works approximately 60 hours per

week, compared to 45 hours per week prior to the bankruptcy filing.

Mr. Robertson, who has been the General Manager for the last four years, testified that he is in charge of the details of operations, including dealing with drivers and scheduling. Since the bankruptcy filing, Mr. Robertson testified that some of Mr. Waters' sales responsibilities have been shifted to him. In addition, since the filing Mr. Robertson testified that he has taken on the additional responsibility of making some local deliveries, approximately two days per week. He testified that since the filing, his daily work hours have increased from approximately nine to twelve hours per day.

■ Based upon the case law, the evidence and the nature of the lawsuit, the Court has concluded that the Defendants have failed to establish entitlement to an extension of the automatic stay. It is clear to the Court, that given the nature of the allegations and close relationship between Messrs. Waters and Robertson and the Debtor, that the Debtor is the most significant target of the lawsuit. It is equally apparent, however, that one lawsuit is involved, compared to the approximately five thousand in the *In re A.H. Robins* case. This is not a situation in which the Defendants will be barraged by discovery and litigation by hundreds of parties and their counsel.

While the testimony of Messrs. Waters and Robertson indicate that the bankruptcy filing has increased their workloads and required the acquisition of additional responsibilities, such changes are an inevitable part of the reorganization process. Unlike the *In re A.H. Robins,* case, which involved numerous parties and attorneys, the Court is not persuaded that the continuation of the instant litigation, involving a handful of parties, will divert the attentions of Messrs. Waters and Robertson to the detriment of the Debtor. With appropriate scheduling and the cooperation of counsel, discovery could be completed in a manner to minimize impact upon the Debtor's business operations.

Regarding the binding nature of any deposition testimony upon the Debtor, it is apparent, given the nature of the allegations, that the possibility of some impact upon the Debtor is inevitable. To the extent to which the Debtor may be called upon to indemnify Messrs. Waters and Robertson, that is an issue that should be addressed in the context of the confirmation of a plan or resolved in the claims process. Finally, since the Debtor has filed a plan and disclosure statement, efforts will have to be made in any event to address the Plaintiff's claims. Currently, the Debtor proposes to amend its plan to provide for the payment of ten percent of the Plaintiff's claims. Subsequent plan negotiations may render further litigation moot.

Finally, the Court is concerned that with any continued delay in the litigation, the Plaintiff's and Defendants' abilities to present evidence will be irreparably harmed by the passage of time and an erosion in the quality of the evidence. At this point some of the events that are alleged in the lawsuit occurred two to three years ago, and there is already some apparent difficulty in recalling dates. Messrs. Waters and Robertson and the Plaintiff offer conflicting versions of what occurred and even who supervised the Plaintiff. Further delay will only make it more difficult to discern the truth.

Accordingly, the Motion Requesting a Preliminary Injunction Staying the Proceedings in Federal District Court is denied.

IT IS SO ORDERED.